JACKSONVILLE, TAMPA & KEY WEST RAILWAY COMPANY, APPELLANT, VS. WILLIAM K. PRIOR, APPELLEE.

1. A declaration against a railroad company alleging that it was the duty of the company under the act of 1887, Chapter 3742, to erect and maintain suitable fences on the sides of its railroad track sufficient to exclude and turn live stock therefrom, and that the company failed to erect and maintain such fence at a point on the road not in a town or city or at a public road crossing, and by means of such neglect plaintiff's cows of certain value mentioned strayed upon the track at the point not fenced and were killed by a passing train of the company, states a good cause of action.

:2. The testimony showed that a railroad company entered into a contract with L. to furnish cross-ties delivered on the track, and that L. employed J. to haul the ties to the track; J. being examined for the defense was asked on what terms he was em-

ployed to haul the ties, and answered that L. paid him so much per tie, and he was not paid by the day. On objection of plain- tiff the question and answer were ruled out: *Held*, That L. and J. were not strangers to the company in getting and haul- ing the ties, and that it was wholly immaterial, so far as de- fendant's liability was concerned, whether J. was employed by the day, or so much per tie.

3. Although a modification of a charge requested by a defendant may not contain a correct proposition of law, yet if the charge as requested and as modified by the court states the law more favorably for the defendant than he is entitled to on the evi- dence, and it further affirmatively appears that no injury could have been done the defendant by giving the charge as mod- ified, the judgment will not be reversed on account of the charge.

4. A plaintiff and another witness in his behalf testified that they were familiar with the market value of cows in the county where plaintiff's cows were killed and stated the value of the cows killed. Defendant offered no evidence in contradic- tion of the value placed on the cows by plaintiff and his wit- ness, but on cross-examination of plaintiff asked him what he paid for the cattle; this question was ruled out by the court on objection of plaintiff: *Held*, That as the question was general, having no reference to place or time, and as it did not appear that defendant was injured by excluding the question, there was no error.

5. The provision in the second section of the act of 1887, Chapter 3742, for the allowance of reasonable attorney fees in case of suit and recovery for live stock killed, as provided in the stat- ute, is not in violation of any constitutional inhibition against such legislation.

Appeal from the Circuit Court for Putnam county.

The facts of the case are stated in the opinion of the court.

*J. R. Parrot* and *T. M. Day, Jr.*, for Appel- lant.

*Calhoun, Gillis & De Witt* for Appellee.

MABRY J.:

The appeal in this case is from a judgment rendered in 1890, in the Circuit Court for Putnam county, in favor of appellee against appellant. The declaration as originally filed, after stating that the defendant company was a railroad corporation, using locomotives and cars, and operating a railroad through Putnam county, alleges, in substance, that it was the duty of the company to erect and maintain suitable fences on the sides of its line of railroad track sufficient to exclude and turn live stock therefrom, but that it neglected to erect and maintain such fences about midway between mile posts 72 and 73, one and one-half miles south of Como in said county; that by means of said neglect to erect and maintain such fences at the place mentioned three cows and one heifer, the property of plaintiff, strayed and went upon defendant's railroad track at said place, and were killed on the first day of June, 1889, by the locomotive and train of defendant operated on said road. It was also alleged that by reason of the negligence of the defendant to erect and maintain substantial fences at said place, and at the time mentioned, sufficient to exclude and turn all live stock, as it was its duty to do by virtue of the statute in such cases made and provided, the locomotive and train of defendant, then and there operated upon said railroad, with great force and violence ran upon and struck the said animals of plaintiff, and by means thereof they were killed by reason of the negligence aforesaid of the defendant. Due notice and presentation of plaintiff's claim for the cows to the defendant, and its refusal to pay for the same for more than thirty days be-

fore bringing the suit, are alleged. The value of the cows was also alleged, and the total damages claimed was $350.

The declaration was demurred to on the grounds: (1) That it did not allege that defendant was required by law to maintain fences at the point where the cattle went upon the track; (2) That it did not allege that the point where the cattle went upon the defendant's railroad track was not in a town or city, or at a public road crossing; (3) That it did not allege the damage to the live stock was caused by a failure to erect or maintain fences and stock-guards. The second ground of the demurrer was sustained, and plaintiff amended by alleging that the place where the cows were killed was not in a town or city, or at a public road crossing. The general issue and contributory negligence on the part of plaintiff were pleaded by the defendant, and on the trial plaintiff obtained a judgment.

It is assigned for error and contended here by counsel for appellant that the court erred in overruling the demurrer as to the first and third grounds thereof. The statute requires every railroad company or other corporation and every person operating or running any railroad in this State to erect and maintain substantial fences on the sides of said railroads, except through towns and cities, unless such towns and cities require them, sufficient to exclude and turn all live stock therefrom, with stock-guards at all public crossings, and at such other crossings as may be necessary, for the use of owners and tenants of lands adjoining such roads, and in case of failure on the part of any company or person operating a railroad to erect and maintain such fences, the company or person operating such road is made "liable for all damages which shall be

done by its or his engines or cars to any live stock, caused in either case by a failure to erect or maintain said stock-guards." Acts of 1887, Chapter 3742. It is made by law the duty of the company to fence its road, and a failure or omission in this respect can not be regarded otherwise than a high degree of negligence, and should cattle stray upon a track not fenced at a point where fences are required, and be killed by a passing engine and cars, no other act of negligence need be shown in order to impose liability upon the company. Jacksonville, T. & K. W. Ry. Co. vs. Harris, 33 Fla., 217, 14 South. Rep., 726; Blair vs. Milwaukee & Prairie du Chien R. R. Co., 20 Wis., 254. The declaration in the present case alleges all the essential facts necessary to impose liability upon the company, and the court did not err in overruling the grounds of the demurrer mentioned.

The testimony in the record before us shows that the defendant company had fenced its track, and plaintiff's cows were killed on said track in Putnam county, at a place where some thirty feet of the fence had been taken out for the purpose of permitting wagons hauling ties for the company to pass into the space enclosed by the fence. One Lanier had a contract with the company to get ties for it, and one Johnson was employed by Lanier to haul the ties to the railroad track. Johnson cut the fence by direction of Lanier some ten days before plaintiff's cows went upon the track and were killed, and it is shown that the gap in the fence through which the wagons passed in hauling ties to the road had been open five or six days before the destruction of the cattle. The place where the gap was made by Johnson was not in a town or city, or at a public or private crossing, and it also appears that the company received the ties hauled to the track, and took

them onto its cars. Johnson, being examined for the defense, was asked on what terms he was employed by Lanier to haul ties, and answered that Lanier paid him so much per tie, and that he was not paid by the day. Plaintiff objected to the question and answer and it was ruled out by the court, and exception taken. We held in the case of Jacksonville, T. & K. W. Ry. Co. vs. Harris, *supra*, that where there is a gap, with bars, in a railroad fence at a place where there is no public or other authorized crossing, and the gap is used, with the knowledge of the company, by persons supplying the company with wood under contract, and engaged in hauling the same to a wood rack on the road, to be used by the company's engines, and such bars are left down by such persons so engaged, and live stock pass through the gap and go onto the road and are killed, the persons so leaving the bars down can not be regarded as strangers to the company, but their acts will be regarded as the acts of the company, and it will be held liable for the damage resulting to the owner of the stock. Whether Johnson was employed by Lanier by the day, or so much per tie for hauling the ties, was wholly immaterial so far as the defendant's liability was concerned. Lanier and Johnson can not be regarded as strangers to the defendant in opening the fence for the purpose of hauling the ties to the railroad track, as it was done not only with the knowledge, but in pursuance of a contract by the company and for its benefit. The company can not relieve itself of liability to cattle owners imposed by statute for a failure to maintain the required fence by entering into a contract with a third party to get ties for it, and in so doing opening and leaving open a fence required to be maintained by the company. Corwin vs. New York & Erie R. R.

Co., 13 N. Y., 42. There was no error, or injury to the defendant, in having the question and answer excluded.

In this connection we will consider an exception to a modification of a charge requested by the defendant. For the defendant the court was requested to give the following charge, *viz:* "If the jury find from the evidence that the defendant erected a substantial fence, and that this fence was broken down and left open by some person not the agent or servant of the defendant, and that the defendant was not guilty of negligence in failing to repair and close said fence, and that the cattle of the plaintiff entered and came upon the defendant's railroad track through the opening made as aforesaid, they will then find for the defendant." The court gave the charge with the following addition: "But if you find from the evidence that the cattle were killed by the defendant's engine or train five or six days after the fence was cut, without closing it up, then you will find for the plaintiff." There was no testimony whatever upon which the jury could have found that strangers, or persons for whose acts the defendant would not have been liable, broke down and left open the fence through which plaintiff's cows passed onto the railroad track and were killed. The proof is positive and uncontradicted that Johnson, who was engaged in hauling ties to the company's railroad track, and for its use, broke down the fence in order to get to the road with wagons loaded with ties. It is equally clear that the fence remained open for at least one week before the cows were killed; and it seems that the company's section master knew this fact. The charge given, with the modification added, was more favorable to the defendant than it should have been, and though the addition may not contain a correct

statement of the law, we do not see how it could have misled the jury to the detriment of the defendant. It was bound to maintain the fence, and was liable for the consequences to the stock by reason of the open condition of the fence for any length of time under the circumstances of this case. We will not stop to consider whether or not the addition to the charge was correct as a legal proposition had there been testimoney before the jury to justify a conclusion that strangers, or parties for whose acts the defendant was not liable, cut the fence. On such a showing what would have been sufficient delay in repairing the fence as to amount to negligence, would properly be a question for the jury, but whether the court was authorized to tell them that, as matter of law, five or six days' delay was sufficient to fix liability, we need not here decide. Conceding that in the particular mentioned the court was in error, there is no ground here for reversing the judgment on that account, as the defendant's liability was clear if the fence was left down under the circumstances stated, for a less time than the shortest period mentioned in the charge.

The plaintiff testified on direct examination that his cows mentioned in the declaration were killed on defendant's railroad track opposite or near the gap in the fence in Putnam county; that he had sold cattle for over forty years, and was thoroughly familiar with their market value. He further stated what each of the cows killed was worth. He introduced another witness who stated that he had bought and sold cattle in that country, and was familiar with their market value; that he knew plaintiff's cows, and placed a value on them in excess of that given by plaintiff. Defendant offered no testimony as to the value of the cows. On cross-examination of plaintiff he was asked,

JUNE TERM, 1894.  279

J., T. & K. W. Ry. Co, v. William K. Prior.—Opinion of Court.

"what did you pay for these cattle," and on objection of plaintiff it was ruled out. There is nothing in the record to indicate what defendant expected to elicit from the witness by the question, or the purpose for which it was asked. The measure of recovery as to value in a case like this is just compensation in money for the property destroyed, with the interest allowed by the statute. The just compensation is the value of the property at the time of its destruction, and this value ordinarily is fixed by ascertaining what was then its market value. Where personal property has a well recognized standard of value wherever found, an enquiry as to its value is not necessarily confined to the market value at the time and place of its destruction, as such a restricted enquiry might, under some circumstances, exclude an investigation as to the real value of the property lost to the plaintiff. Jacksonville, T. & K. W. Ry. Co. vs. Peninsular Land, T. & M. Co., 27 Fla., 1, 9 South. Rep., 661. The market value, and not what plaintiff may have paid for the cows, was, however, the true estimate of what he was entitled to recover. There may be cases where an investigation into the cost of personal property destroyed may be proper, but where such property is not shown to have been removed from a locality, and has a demand and market value at the time and place of its destruction, its cost to the owner, without connecting such cost in some way with the market value, will not be proper. In order to make an investigation into the cost of property destroyed proper, it ought to appear that the cost was necessary in some way to fix the market value of the property when destroyed, or it may be for the purpose of impeaching the estimate of the witness as to market value. The question propounded by defendant was general, without refer-

ence to time or place, or that plaintiff had in fact bought the cattle, and no offer was made, so far as we can see, to show the materiality of the answer to it. We think the trial court should be liberal in permitting an investigation as to the value of property, but still, under the circumstances here, we do not see any detriment to the defendant in excluding the question under consideration.

The remaining assignment of error requiring consideration is, that the verdict was erroneous in including an attorney fee for plaintiff. This objection is not that the attorney fee was not sufficiently proven, but that the provision in the statute allowing attorney fees is unconstitutional. A statute in Alabama provided that any corporation, person or persons owning or controlling any railroad in this State, or any complainant against such corporation, person or persons, taking an appeal from a decision rendered by a justice of the peace, in a suit for damages brought under the provisions of an act defining and regulating the liability of railroads for damage to live stock, and failing to sustain such appeal, or to reduce or increase the judgment before the appellate court, shall be liable for a reasonable attorney's fee incurred by reason of such appeal, to be assessed by the court, not to exceed twenty dollars; and the attorney's fee shall be part of the costs and collected as such. The provision in reference to the attorney fee was declared void as being violative of that equality and uniformity of rights and privileges which by the principles of the Constitution, State and Federal, are secured to all persons, and as creating unequal and unjust discrimination against a particular class of litigants. South & North Alabama R. R. Co. vs. Morris, 65 Ala., 193. The Mississippi court in the case of Chicago, St. Louis & N. O. R. R.

Co. vs. Moss & Co., 60 Miss., 641, declared unconstitutional and void the following statutory provision, *viz:* "That whenever an appeal shall be taken from the judgment of any court in any action for damages brought by any citizen of this State against any corporation, a reasonable attorney fee for the appellee shall be assessed by the court and certified by the clerk of the court or justice of the peace, as the case may be, to the appellate court, and upon affirmance of the judgment, a judgment for the amount so assessed shall be rendered in favor of the appellee and against the appellant, and the sureties on his appeal bond, and collection thereof shall be had in the same manner as of other judgments rendered on appeal; provided the fee so assessed shall not be less than fifteen dollars in appeal from the court of a justice of the peace, nor less than twenty-five dollars in appeal from the judgment of a Circuit Court." In the case referred to the court said: "The subjection of every unsuccessful appellant to a charge for the fee of the attorney for the appellee would afford no ground for complaint as unequal, for it would operate on all, and such a rule for the unsuccessful appellant in certain classes of actions, tested by the nature and subject of the actions, would be equally free from objection on the ground of its discriminating character; but to say that where certain persons are plaintiffs, and certain persons are defendants, the unsuccessful appellant shall be subjected to burdens not imposed on unsuccessful appellants generally is to deny the equal protection of the law to the party thus discriminated against." A statute in Arkansas provided, in substance, that whenever any stock should be killed by a railroad in that state, the owner of the stock or the railroad company could demand an appraisement by

sworn appraisers, one to be selected by each party, and if the appraisers so selected could not agree, they to select a third appraiser. Should either party decline to select an appraiser as provided by the statute when notified, the appraiser selected by the other party demanding the appraisement was authorized to select an appraiser and proceed to ascertain the value of the stock killed. The act further provided that if the company failed for thirty days, after delivery of the appraisement to its agent, to pay the amount assessed, the owner could sue for damage done to the stock and recover, in addition to the amount assessed as damages for killing or injuring the stock, a reasonable attorney fee for the plaintiff, and in any court to which an appeal should be taken a reasonable attorney fee should be allowed in that court, to be taxed and collected as other costs in the case in such court; but if the company tendered the full amount of such appraisement within the thirty days, and the same be refused and suit instituted for the damage to such stock, unless the owner recovered a greater amount than that tendered, the court trying the case was required to assess a reasonable attorney fee for the defendant, and in case of appeal, the appellate court was required to assess such attorney fee for the defendant, to be taxed and collected as other costs in such court. This act was declared unconstitutional in the case of St. Louis, Iron Mountain & Southern Ry. Co. vs. Williams, 49 Ark., 492, 5 S. W. Rep., 883. A statute in Michigan required railroad companies to fence their tracks, and provided that until the fences and cattle-guards required should be constructed the companies should be liable for all damage done to cattle resulting from a failure or neglect to construct said fences and cattle-guards to be recovered in any

JUNE TERM, 1894. 283

J., T. & K. W. Ry. Co. v. William K. Prior.—Opinion of Court.

court of competent jurisdiction, together with an attorney's fee of twenty-five dollars, to be taxed as costs against the defendant in case of recovery in the action. This act was declared unconstitutional in the case of Wilder vs. Chicago & West Michigan Ry. Co., 70 Mich., 382, 38 N. W. Rep., 289, and is, we concede, an authority directly in favor of the position of appellant. Corporations, it must be conceded, have equal rights as to the privileges granted to them with natural persons in the courts of justice, as they may sue and be sued with respect thereto as natural persons, and the law must be administered with the same equality and justice when applied to the one character of persons, as to the other. Unless there is some legal and constitutional ground authorizing the Legislature to impose upon a railroad corporation the burden of a reasonable attorney fee in addition to damages to stock injured by reason of a failure to fence its track, or, to speak more accurately as to the powers of the Legislature, if there is a constitutional inhibition, State or Federal, against the right to impose such fee in a suit against a railroad company to recover damages done to stock by reason of a failure to fence as required by statute, then the act in question must be declared void, but if it does not conflict with some constitutional provision, it is the duty of the courts to enforce it. Statutes allowing such a fee have been held constitutional under provisions in bills of rights similar to our own. The theory upon which railroad corporations can be required by the Legislature to fence their tracks is protection against accidents to life and property in conducting such business. It appertains to the police power of the State to protect life and property in any business or employment, whether in the charge of a private individual or a corporation. When the Leg-

islature requires railroads to fence their tracks, a public duty is thereby imposed upon them and they can be coerced in the performance of this duty by the imposition of penalties for a failure to comply. This view, we think, is fully sustained by the courts. Corwin vs. New York & Erie R. R. Co.; Blair· vs. Milwaukee & Prairie du Chien R. R. Co., *supra;* Peoria, Decatur & Evansville Ry. Co. vs. Duggan, 109 Ill., 537; Kansas Pacific Ry. Co. vs. Mower, 16 Kansas, 573; Missouri Pacific Ry. Co. vs. Humes, 115 U. S., 512. The case last cited from the United States Supreme Court involved the constitutionality of a Missouri statute requiring railroad companies to fence their tracks, or become liable in double the amount of all damages done to stock straying upon the tracks and occasioned by the failure to construct such fences. Judge Field, who wrote the opinion of the court, after stating that the State Legislature had the right by virtue of its police power to require railroad companies to fence their tracks, says: "In few instances could the power be more wisely or beneficially exercised than in compelling railroad corporations to inclose their roads with fences having gates at crossings, and cattle-guards. The speed and momentum of the locomotive render such protection against accident in thickly settled portions of the country absolutely essential. The omission to erect and maintain such fences and cattle-guards in the face of the law would justly be deemed gross negligence, and if, in such cases, where injuries to property are committed, something beyond compensatory damages may be awarded to the owner by way of punishment for the company's negligence, the Legislature may fix the amount or prescribe the limit within which the jury may exercise their discretion. The additional dam-

ages being by way of punishment, it is clear that the amount may be thus fixed; and it is not a valid objection that the sufferer instead of the State receives them. That is a matter on which the company has nothing to say. And there can be no rational ground for contending that the statute deprives it of property without due process of law." In the case of Kansas Pacific Ry. Co. vs. Mower, *supra*, Judge Brewer discusses the question fully and the decision was that the Legislature had the right to provide that a reasonable attorney fee should be allowed to a successful plaintiff in a suit to recover damages to live stock caused by the failure of a railroad company to fence its tracks when required by law to do so. We think the correct view is announced in this decision. The Illinois case referred to sustains the same view. The acts declared void in Alabama and Mississippi had features which distinguish them from our statute on the subject. They attempted to impose a penalty in the guise of attorney fees for the privilege of prosecuting an appeal. In neither of these acts, nor in the one in Arkansas, were the railroad companies required to fence their tracks, and the attorney fees allowed in suits to establish damages to stock by reason of a failure to fence. Other differences might be pointed out, but we do not deem it necessary here. Our statute applies to all railroad corporations and persons operating railroads in this State, and can not be said to be a special law applicable to an individual class. All of the same class are affected by it.

We find no sufficient reason for reversing the judgment in this case, and it is therefore affirmed.