ATLANTIC COAST LINE RAILROAD COMPANY, a Corporation, v. L. T. IVEY.

5 So. (2nd) 244

En Banc

Opinion Filed December 2, 1941

Rehearing Denied January 8, 1942

*John B. Sutton* and *Charles Cook Howell,* for Plaintiff in Error;

*Knight & Knight,* for Defendant in Error.

BUFORD, J.—In a suit to collect damages under Sections 4586 R.G.S. 6669 C.G.L., *et seq.,* resulting from the killing of a cow by the railroad company on the unfenced right-of-way of the railway, the defendant raliroad interposed a plea, viz.:

"4 A. The defendant alleges the following facts, and avers that upon and because of them the Florida statutes upon which the declaration herein is based (Secs. 6669, 6670, 6671, 6672, 6673 and 6676, Compiled General Laws of Florida, 1927) are each unconstitutional as applied to the case stated by said declaration, because said statutes severally deny to the Defendant the due process of law, and also the equal

protection of the law guaranteed to the Defendant by Sections 1, 4 and 12, of the Declaration of Rights to the Constitution of the State of Florida, and by the 14th Amendment to the Constitution of the United States, in this to-wit: In the year 1899 when said statutes were passed, there were no paved highways in the State of Florida, no automobiles, no motor busses, no motor trucks, and substantially all the freight and passenger traffic into, in and out of the State of Florida was transported by railroads; today there are many thousands of paved highways in Florida, thousands of automobiles, and hundreds of motor busses and motor trucks carrying and transporting daily, besides their operators, property of great value and thousands of passengers at rates of speed fairly comparable to, and in many instances exceeding, the rate of speed at which the Defendant operates its trains; much of said freight and passenger transportation is for hire and is in competition with the transportation of passengers and freight by the defendant and other railroad companies in the State, and at some seasons of the year more passengers in number are carried by said automobile, bus and truck transportation upon the paved highways of the State than by all the railroads operating within said State; whatever of hazard, jeopardy or danger there now may be to property or to passengers on railroad trains from the failure to fence the railroad tracks, exists to an equal, and in many instances, to a greater degree in respect to the property and passengers carried in such automobiles, trucks and busses; since the year 1889; the numbers of domestic livestock roaming at large in Florida have continuously decreased so that at all times mentioned in the declaration herein approximately 70% of the

domestic livestock in Florida does not and did not roam at large, whereas in 1889 practically all domestic live stock in Florida did roam at large, and by consequence of such changed conditions the burden placed by said statutes upon this Defendant as a railroad company has become and is greatly disproportionate to the public good or benefit, and an unreasonable expense on this Defendant; it has been many years since any property being carried by a railroad train in Florida has been damaged, injured or destroyed, or any persons being so carried killed or injured, as a result of a collision between a railroad train and domestic live stock; but injury to and death of persons being carried in automobiles and trucks upon the public highways of the State resulting in collisions between motor driven vehicles and domestic live stock are a matter of almost daily occurrence, and in each of the years 1937, 1938 and 1939, from 20 to 25 persons were so killed; the changed economic, transportation, and safety conditions respecting the carriage of passengers and property and their protection from roaming domestic live stock while being carried, as hereinabove alleged, render it unfair, unjust and inequitable to require this Defendant as a railroad company to fence its tracks, for the protection and safety of the traveling public and their property, against such live stock roaming at large, without making a similar fencing requirement of the owners of automobiles, trucks and busses carrying passengers upon the unfenced public highways of the State upon which said vehicles operate; there is no longer any reasonable basis for such classification as said statutes make of railroads required to comply with said statutes, as compared with the aforesaid other methods of

transportation since the year 1889, has become and is now arbitrary, unreasonable and unjust, and such classification deprives the defendant as a railroad company of the equal protection of the law on the subjects covered by said statutes which is enjoyed by the owners of automobiles, busses and trucks engaged, as aforesaid, in the property and passenger transportation business, and deprives the defendant as a railroad company of its property without due process of law." —together with the additional plea, viz.:

"4-B.   The defendant here alleges every fact alleged in its plea numbered 4-A and says further; The paved highways aforesaid are public highways of the State of Florida, built, constructed, kept in repair and maintained by taxation, and are not themselves taxed or subject to taxation.   On the contrary, the railroad tracks aforesaid and the rights-of-way upon which they are laid are built, constructed, kept in repair and maintained by private corporations; they are subject to taxation, and are taxed by the State of Florida and divers of its governmental agencies."

Demurrers to the pleas were sustained and, on the trial, judgment was for plaintiff including double damages and attorney's fees.   Defendant took writ of error.

The sole question which we are asked to determine is whether or not the application of the said statutes under conditions obtaining by reason of the adoption of modern methods of transportation by common carriers of freight and passengers which have come to exist in both interstate and intrastate transportation and commerce, violate the equal protection guarantee of the State and Federal Constitutions.

It stands adjudicated that the purpose of the statutes, *supra,* is the protection against accidents to life and property in conducting public transportation and that such statutes are in the exercise of the police power. See Jacksonville, etc., Ry. Co. v. Prior, 34 Fla. 271, 15 Sou. 760, 764; A.C.L. Ry. Co. v. Perry, 69 Fla. 133, 67 Sou. 639.

It cannot be questioned that those transportation companies engaged as common carriers on the public roads and those so engaged on their privately owned roads such as railroad companies, owe like duties to the public and are under like obligations for the protection against accidents to life and property in conducting such business.

The pleas allege, and the demurrers admit, that the hazard of accidents to life and property by reason of cattle straying onto the line of traffic of motor-driven vehicles on the public road is greater than that so arising by cattle straying onto the line of traffic of the railroad carrier.

The courts will take judicial notice of the fact, which is generally known, that there was no such thing as motor carriers engaged in common carriage on the public roads when these statutes were enacted in 1880. It is true the statutes have been amended since that time but the amendments relate to the original Act.

It is well settled that a statute valid when enacted may become invalid by change in conditions to which it is applied. See Nashville C. & St. L. Ry. v. Walters, 194 U. S. 405, 79 L. Ed. 949, and cases there cited.

The allegations of the pleas are sufficient to show, and the demurrer admits, that compliance with the statute places a burden of expense on the rairoad company to provide for the safety of life and property

of those whom it assumes to serve which is not re-quired to be borne by competitive motor carriers which subject the lives and property of those whom they assume to serve to greater hazards of the identical character which the railroad is required to so guard against and it is also shown that under the statutes penalties are imposed on the railway carrier in favor of individuals who are neither shippers nor passengers.

Under the statutes, as shown by the record here, the railway common carrier is not only required to carry the burden of fencing its traffic line for the protection of the persons and property it transports, while other common carriers are not required to provide the like protection, but in addition to this, there is another gross inequality imposed by the statute, viz.: Under the statutes the plaintiff to whom the carrier, as such, was under no obligations, was allowed to recover double the value of the animal killed, plus $50.00 as attorney's fees, and was not required to prove any act of negligence on the part of the carrier in the operation of its equipment, while if a common carrier bus or truck had by the operation of its equipment killed the same animal in the same locality, the plaintiff would have been required to prove negligence in the operation of the equipment and the common carrier would have been liable only for the value of the animal. This certainly is not equal protection of the law.

It is no answer to the proposition to say that the motor carrier operates on the State and county highways which it has no authority to fence. The same legislative power which may require a carrier to fence its right-of-way for the protection of the life and

property of those whom it assumes to serve may also authorize and require motor carriers to provide like protection or in default thereof to suffer like penalties as incident to using such public roads for profit and assuming to so serve the public. While it is true that the statutes, *supra,* have been held valid in J.T. & K.W. Ry. Co. v. Prior, *supra;* S.A.L. Ry. Co. v. Robinson, 68 Fla. 407, 67 Sou. 139, the question here presented has not been heretofore presented to the court, nor have we had cited a case from any other jurisdiction presenting this question.

We hold that the legal principles involved in determining the question here presented are the same in regard to the constitutionality of the present application of the statutes, *supra,* as those stated in regard to the legality of the classification adopted for legislative regulation in the case of S.A.L. Ry. Co. v. Simon, etc., 56 Fla. 545, 47 Sou. 1001, 20 L.R.A. (N.S.) 126, 16 Ann. Cas. 1234.

On authority of the opinion and judgment in that case, we hold the application of the statutes under existing conditions to deny the constitutional guarantee of equal protection of the law.

The judgment is reversed.

So ordered.

BROWN, C. J., WHITFIELD, TERRELL, and CHAPMAN, J. J., concur.

THOMAS and ADAMS, J. J., dissent.

CHAPMAN, J. concurring specially.—L. T. Ivey filed suit in the Circuit Court of Clay County, Florida, against the Atlantic Coast Line under the provisions of Secs. 6669, 6670, 6671, 6672, 6673 and 6676 C.G.L., for the killing of a cow valued at $100.00. The Atlan-

tic Coast Line, by pleas, challenged the right to maintain the suit on the ground of the unconstitutional application of the aforesaid statutes because of changed conditions since their enactment. The statutes were enacted more than a generation ago and by this Court sustained under the police power of the Constitution. It is settled law that a police regulation may be valid when enacted, but may become arbitrary and confiscatory in application or operation by subsequent events. See Abie State Bank v. Weaver, 51 Sup. Ct. Rep. 252, 282 U. S. 765, 65 L. Ed. 690; Bryan v. Hubbell Bank, 53 Sup. Ct. Rep. 785, 287 U. S. 753, 77 L. Ed. 1478; 16 C.J.S., page 544, par. 175.

The changed condition interposed as a constitutional defense admits that domestic animals, fences, railroads and rolling stock are the same as when the challenged statutes were enacted, but that the railroads are engaged in the transportation of freight and passengers for hire, and motor busses and trucks are engaged in the same business over the highway system of State roads. The challenged statutes were enacted and here sustained prior to the advent of the motor busses and trucks and, while inapplicable thereto, are applied to the railroads. That the changed conditions make the statutes applicable to the railroads but inapplicable to the trucks and busses engaged in the same business. That the discrimination created by the changed conditions falls within the inhibitions of the Fourteenth Amendment to the Federal Constitution.

It is admitted that the railroads and the trucks and busses are now engaged in the same business. The trucks and busses operating on the highways when engaged in the same business may kill an animal named in the statutes and not be subject to the several

provisions of these statutes, while the railroads similarly engaged would be subject to their several provisions. It is a denial of the equal protection of the law to discriminate in legislation between corporations or persons engaged in the same business. See 16 C.J.S. par. 504, page 991; 12 C.J. par. 877, page 1142-3; Crom v. Frahm, 33 Ida. 314, 193 Pac. 1013. There can be no violation of the equal protection provision when corporations are similarly affected under like conditions. The classifications made by the statute refer to those businesses affected by the regulation as distinguished from the subject regulated. See King Lumber & Mfg. Co. v. A.C.R.R. Co., 58 Fla. 292, 50 So. 509.

It is well established that courts are not concerned with the reasons for the enactment of legislation, or, after enactment, whether or not the statutes are harsh, unfair, create hardships and injustice, or are wise or unwise. The courts are not the guardians of the rights of the people against oppressive legislation which fails to violate the provisions of the Constitution. Several sessions of the Legislature have convened since the advent of the automobile and the construction of our highway system and have failed or omitted to enact legislation placing busses and trucks under the several provisions of the challenged statutes. The judiciary is without power to legislate. See Mayo v. The Polk Co., 124 Fla. 534, 169 So. 41.

I concur in the opinion prepared by Mr. Justice Buford.