**W. D. McRAE, v. ATLANTA & ST. ANDREWS BAY RAILWAY COMPANY, a corporation.**

23 So. (2nd) 76                                    June Term, 1945
July 24, 1945                                              En Banc
Rehearing denied Sept. 14, 1945.

*James H. Finch,* for appellant.

*Powell, Goldstein, Frazer & Murphy* (Atlanta Georgia), *B. L. Solomon* and *Thomas Sale,* for appellee.

BUFORD, J.:

Appeal brings for review judgment in favor of the defendant on demurrer sustained to plaintiff's amended declaration. The declaration is of considerable length. However, we shall quote it in full, as this is a case of first impression in this State and we find this declaration to be (except for the inclusion of the words "and the plaintiff further avers that in addition to the duty so imposed upon the defendant by the perspective rights acquired and held by the plaintiff, as aforesaid, to keep up and maintain the said cattle guards and connecting fences, at the point aforesaid, the defendant was, during the said year 1942, required by law to keep up and maintain such cattle guards and connections, at the point or place aforesaid") a model of pleading in cases of this sort where the plaintiff bases his claim on rights acquired by prescription. The declaration is as follows:

"AMENDED DECLARATION

"W. D. McRae, the plaintiff, by his attorney, sues the Atlanta & St. Andrews Bay Railway Company, a corporation organized and existing under the laws of the State of Alabama, defendant, for damages in an action ex delicto, and for cause of action on this amended Declaration, alleges:

"(a) That the Plaintiff now is, and since October, 1936 has been, the owner in fee simple of the following described lands, situated in Jackson County, Florida, commonly known as the Hollis Farm, to-wit: (Description omitted)

"A plat of said lands is hereto attached, marked Exhibit A, and by reference is made a part of this declaration.

"(b) That the plaintiff has regularly and annually farmed the said tract of land, described in Exhibit A, the greater part of which is open farm land, since the year 1937, planting, cultivating and harvesting annually crops of cotton, corn, peanuts and other annual agricultural crops on said land, and that prior to 1937, plaintiff's predecessors in title to said land have regularly and annually, for a period of more than 30 years, planted, cultivated and harvested agricultural crops of the kinds aforesaid on the said lands described. That the plaintiff is a citizen of Jackson County, Florida, and since acquiring title to said lands, and prior thereto, has had and maintained his home, and residence, in the town of Graceville, Florida, about 6 miles west of the said Tract of land.

"(c) That the defendant Atlanta & St. Andrews Bay Railway Company, a corporation as aforesaid, owns and operates a railroad extending from Dothan, in the State of Alabama, to Panama City, in the State of Florida, and has owned and operated the said railroad for more than 35 years prior to the commencement of this suit; and that in the operation of said railroad the defendant has, for the period mentioned, been engaged in and is now engaged in the carriage and transportation over said line of railroad, for hire, carrying both passengers and freight, and operating trains daily.

"(d) That the said line of railroad of the defendant runs southwardly from Dothan, Alabama, over and through the said lands of the plaintiff, described above, and set forth in plat. Exhibit a; and that some 200 to 300 yards south of the southern border of the plaintiff's lands, the defendant has and maintains a station, known as Campbellton.

"(e) That for more than 30 years prior to the year 1942, the plaintiff's lands above described constituted one single farm, or farm unit, and was used for farm purposes usually under one management at the time; and during the said period, extending up to the early summer, or late spring, of 1942, that is to say, about the month of April 1942, the entire tract of land described in Exhibit A was enclosed by a substantial fence, erected and maintained by plaintiff and his predecessors in title along the outer boundaries of said tract, Exhibit A, and such fence, at the points where same made

contact with the Defendant's railroad aforesaid, was connected, or made continuous, by cattle guards, extending from the fence to the rails on each side of the railroad, and existing and maintained between the rails of said railroad.

"Plaintiff alleges that during the said 30 years next prior to the year 1942, the defendant has not kept or maintained any fence along each side of its said railroad where same traverses the plaintiff's land, described in Exhibit A.

"(f) That for and during the period aforesaid there was kept and maintained by the plaintiff, and his predecessors in title, a substantial stock fence along the western, southern, eastern and northern boundaries of the tract of plaintiff's land, hereinabove described, and more particularly shown in Exhibit A; that the fence on the southern boundary line of said land, as kept and maintained by plaintiff, and his predecessors in title, extended from the southwest corner of said tract eastwardly to within approximately 25 feet of the center line of said railroad, and to such point was constructed of wire, fastened to posts, and from such point eastward to within about 3 feet of the outer rail on the west side of said railroad was constructed of planks, or boards; and that the boundary line fence on the southern boundary of said tract on the east side of said railroad was constructed in like manner or fashion; and that during the period of years aforesaid the defendant kept and maintained stock guards, made of iron, between the rails, and on each side of the tract of said railroad, on the said southern land boundary line of plaintiff's said land, which iron cattle guards besides covering the space between the rails of said track, extended on each side of said railroad to the board and wire fences, aforesaid; and that the fences so built and maintained by the plaintiff and his predecessors in title, together with the board fences and cattle or stock guards so kept and maintained by the defendant, during the period aforesaid, the lands of the plaintiff aforesaid were completely enclosed in such manner as to prevent the intrusion of cattle, hogs and other live stock, from without, into and upon the lands of plaintiff described hereinabove.

(g) Plaintiff further alleges that in the Spring of 1942, the plaintiff planted on said tract of land described as Exhibit A, within the enclosure aforesaid, the following crops, to-wit:

Solid corn                    145  acres
Peanuts  for  harvest         25  acres

"That prior to planting such crops of corn and peanuts, the land thereon planted was well broken and prepared for planting, and the said crops were well and in a business-like manner planted of good seed, and were well fertilized, and for and throughout the respective cultivation periods governing such crops of corn and peanuts the said crops were regularly, at proper intervals, cultivated, such planting, fertilization and cultivation having been in accord and keeping with the best approved agricultural methods then known and practiced in Jackson County, Florida; and that but for the damages, injuries and destructions of such crops hereinafter alleged, plaintiff's production of said crops on said land for said year would have been 3,500 bushels of corn, and 12 tons of peanuts, of the aggregate value of $5,800.00.

"(h) Plaintiff further alleges that by reason of the facts hereinabove alleged, that is to say, by reason of the fact that for and during a period of more than 30 years next prior to the year 1942, the defendant had voluntarily, and regularly kept up and maintained cattle guards, and right-of-way connecting fences at the place or point where defendant's railroad crosses the southern boundary line of plaintiff's said tract of land, as shown by Exhibit A, and as hereinabove described, (which said cattle guards and connecting fences at said point had been kept and maintained in reasonably good order, sufficient to prevent the passage of cattle, horses, hogs, sheep, goats or other domestic animals from the outside of said enclosure into or upon the lands so enclosed as plaintiff's said tract, Exhibit A) the plaintiff for and during the calendar year 1942 had held the right, acquired by prescription, by plaintiff and his predecessors in title, to have such cattle guards and connecting fences, as aforesaid, at the point or place aforesaid, where defendant's railroad crosses the southern boundary line of plaintiff's said tract of land, described as Exhibit A, kept up and maintained, in good order, and in such manner as to turn or prevent the passage of cattle, horses, hogs, goats and sheep, and other domestic animals, from the area outside of plaintiff's said farm en-

closure, as hereinabove shown, into and upon the lands of defendant's right-of-way within the said farm enclosed within the area of defendant's said right-of-way covered by the said cattle guards and connecting fences, extending for a distance of 25 feet on each side of the center line of defendant's said right-of-way, at the point aforesaid, to the outer boundary fences of the plaintiff, at said point, on each side of said railroad; and the plaintiff further avers that in addition to the duty so imposed upon the defendant by the prescriptive rights acquired and held by the plaintiff, as aforesaid, to keep up and maintain the said cattle guards and connecting fences, at the point aforesaid, the defendant was, during the said year 1942, required by law to keep up and maintain such cattle guards and connections, at the point or place aforesaid.

"(i) Plaintiff further alleges that notwithstanding the duties imposed on the defendant as aforesaid, the defendant, by its agents, servants and employees, particularly its section foreman and section employees, well knowing that crops of plaintiff had been planted upon plaintiff's said land within the said enclosure, and that such crops were growing and being cultivated by the plaintiff within the said enclosure, being the lands described in Exhibit A, and well knowing that the plaintiff as the owner of such crops was relying upon the maintenance of plaintiff's outer boundary line fences to protect plaintiff's crops from roving animals running at large in the territory outside of said farm enclosure, and well knowing that numerous domestic animals, including cattle, hogs, goats, sheep and other domestic animals were then and there running at large in the area outside of said farm enclosure of plaintiff, and well knowing that there was no fence between defendant's right-of-way and the adjoining lands of plaintiff, within said enclosure,—defendant did, by its agents, servants and employees, without any warning or advance notice to the plaintiff, and without the knowledge or consent of the plaintiff, wrongfully and unlawfully tear down, in breach of its duty and in violation of the law, on or about the _____ day of April, 1942, the exact date being to the plaintiff unknown, the board fence on the east side of Defendant's said railroad

where said railroad crosses the southern boundary of plaintiff's said land and enclosure, over a space some 20 feet wide, on the east side of defendant's track, and upon defendant's right-of-way, through which cattle, hogs, goats, sheep and other domestic animals might freely and unobstructedly wander and enter the said Farm and enclosure of the plaintiff, and as a result of such wrongful and unlawful tearing down of such connecting fence, and by reason of the wrongful neglect of the defendant to immediately restore such fence, great hordes of cattle, hogs, goats, sheep and other domestic animals did thereafter enter from the outside of plaintiff's said enclosure into and upon the right-of-way of the defendant, and thence into and upon the farm and growing crops of the plaintiff, and did eat up, trample down, knock down and destroy great portions of the said growing corn and peanuts, to the great damage and injury and loss of the plaintiff, as the owner of said crops.

"That upon the plaintiff's acquiring knowledge that the said fence had been so torn down, as aforesaid, the plaintiff promptly applied to the defendant to have said fence restored and put back in good condition, as it had previously been, and the defendant agreed to restore such fence, and did temporarily restore same; and that soon thereafter, and from time to time, during the month of April, May, June and July, 1942, the Defendant, by its agents, servants and employees did wrongfully, unlawfully and negligently tear down, and keep down the said connecting fence, over the space and at the point aforesaid, the exact dates of such tearing down, and period of keeping down, the said fence being to the plaintiff unknown; and during such period the defendant did, by its agents, servants and employees grade an area some 20 feet or more in width on the east side of defendant's said railroad, and did operate over such area a great number of trucks, and did for the space of some ¾ of a mile through the enclosure of plaintiff's said farm construct, on the east side of its said railroad main track, an extra track or line of railroad, such operations with trucks and other machines in the construction and laying of such extra track covering a period of approximately three months or more, and during such opera-

tions, from time to time, on many days, and at intervals for several days at the time, the Defendant did negligently and wrongfully fail to restore the said connecting fence, at the point aforesaid, and did negligently and wrongfully fail to erect any barrier at said point where the open space had first been made, as aforesaid, to prevent the entry and intrusion of cattle, hogs, goats, sheep and other domestic animals, and because of the wrong and negligence of the defendant, great hordes of cattle, hogs, goats, sheep and other domestic animals did, from time to time, enter into and upon defendant's said right-of-way at the point where said fence had been so torn down, as aforesaid, and did from the defendant's said right-of-way go into and upon the plaintiff's said enclosure and plaintiff's said growing crops of corn and peanuts, and did eat up, trample down, knock down, and otherwise destroy great portions of the plaintiff's said crop of growing corn and peanuts, all to the great damage and injury and loss of the plaintiff.

"Plaintiff alleges that the crops so destroyed as aforesaid were of the value of $2900.00, and that all of such damage, injury and loss was the result of the wrongful acts and negligence of the defendant. That due demand has been made upon the defendant to pay the plaintiff such damages, but the defendant has failed and refused to pay the said damages, or any part thereof, and still so refuses."

The language in the declaration hereinabove quoted in the second paragraph of this opinion in parentheses should be eliminated under order for compulsory amendment which is hereby denied because it is apparent that this clause in the declaration was inserted under the theory that the railroad was bound to construct and maintain the connecting fences and cattle guards referred to under the provisions of Sec. 356.02 Fla. Stats, 1941 (same F.S.A.). The provisions of this section never applied to connecting fences and cattle guards like those involved in this case but only applied to connecting fences and cattle guards in those fences which were required to be constructed by the Railroad Company enclosing railroads in this State. Therefore, the statute law has no application to the present case. The railroad company was not

required by statute to build stock gaps and connecting fences or to maintain the same at the places where its railroad entered or departed from the enclosed farm lands through which it passed. But, having so constructed such stock gaps and connecting fences so as to protect those farm lands through which it passed from the intrusion of roaming livestock and having so maintained such stock gaps and connecting fences either voluntarily or by agreement with the former owner of the farm land through which the railroad passed, such owner of such farm land acquired the right to have such stock gaps and connecting fences continued by the railroad company in good and efficient condition to prevent the intrusion of livestock on the farm land.

The declaration not only alleges that the railroad company failed to maintain these facilities, but, on the other hand, alleges that the railroad company by its agents and servants deliberately tore down and destroyed the connecting fences and let roaming stock in on plaintiff's growing crop; and this at a time after plaintiff had acquired his rights under prescription.

The right of the plaintiff to acquire by prescription the right to have the connecting fences and cattle guards maintained appears to be settled beyond any question. See Titus v. Penn. R.R. Co., 87 N. Y. Law 157, 92 Atl. 944; Castner v. Riegel et al., 54 N. J. Law 498, 24 Atl. 484. See also note under Titus v. Penn. R.R. Co., *supra,* Ann. Cases 1917-B page 1253; Ward v. Paducah & Memphis R.R. Co., 4 Fed. 862, 49 C. J. 1335.

(As has been hereinbefore stated, there was no statute requiring the defendant to construct and maintain stock gaps and connecting fences such as are here dealt with, and therefore, the contention of the appellee that the stock gaps and connecting fences were constructed under requirements of the statute and that, therefore, no prescriptive right began to accumulate until that statute was held invalid by this Court in the case of A.C.L. R.R. Co. v. Ivey, 148 Fla. 680, 5 So. (2nd) 244, in which case opinion was filed December 2, 1941 and rehearing denied January 8, 1942, is without merit.)

Grounds of the demurrer numbered 7, 8 and 9, and being as follows:

"7. Damages based upon the value of unmatured crops are analogous to profits loss, and are governed by the same rules precluding recovery in cases of either uncertainty or remoteness.

"8. The measure of damages for the entire destruction of a growing crop is its value at the time and place of destruction, whereas plaintiff seeks to recover the matured value of crops, contrary to law.

"9. Taking the amended declaration more strongly against the pleader, it merely shows that the plaintiff planted crops without any showing that they were cultivated to the extent that their maturity could reasonably be expected."—were not specifically ruled on by the court below. We may say, however, that these grounds of demurrer only applied to the measure of damages. The measure of damages will be determined upon the application of the evidence to the allegations of the declaration and we do not now intimate whether the plaintiff will be entitled to recover the full value of the crops of farm production had they been allowed to mature, or will be confined in recovery to the value of such growing crops at the time they were destroyed.

For the reasons stated, the judgment is reversed with directions to reinstate the cause and overrule the demurrer but requiring the declaration to be amended by eliminating the clause hereinbefore quoted in parentheses.

So ordered.

TERRELL and ADAMS, JJ., concur.

CHAPMAN, C. J., BROWN, THOMAS and SEBRING, JJ., concur in conclusion.

CHAPMAN, C. J., concurring in conclusion:

I am unable to concur in the opinion as prepared by Mr. Justice BUFORD but am in accord with the judgment of reversal. A study of the record and briefs of counsel, coupled with an independent search of the applicable authorities, leads to the conclusion that one of the rules of statutory construction recognized by this Court and cited with approval

by the Supreme Court of the United States is determinative of this controversy.

Pertinent portions of Section 356.02, Fla. Stats. 1941 (FSA), are viz: "and there shall be such crossings and stock guards constructed on all railroads passing through farms at such places as may be reasonably requested by the owners or their agents." We held in Smith v. Chase, 91 Fla. 1044, 109 So. 94, that a statute may be invalid as applied to one state of facts and yet valid as applied to another. This rule has been cited with approval in many cases. See Ex Parte Wisc. 141 Fla. 222, 192 So. 872; City of Miami Beach v. The Texas Co., 141 Fla. 616, 194 So. 368; In re: Seven Barrels of Wine, 79 Fla. 1, 83 So. 627; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 So. 282. This rule has been cited with approval in Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 66 L. Ed. 239, 42 S. Ct. 106; Kansas City Sou. Ry. Co. v. Anderson, 233 U. S. 325, 58 L. Ed. 983, 34 S. Ct. 599.

Counsel have placed different constructions on our holding in the case of Atlantic Coast Line R.R. Co. v. Ivey, 148 Fla. 680, 5 So. (2nd) 244. In this case we held that because of the peculiar facts involved, the cited statutes could not be enforced without depriving the railroad company of the equal protection of the law. Our holding was limited to the facts presented on the record in that cause. We did not hold the application of the statutes unenforceable for all purposes. We have on this record a different set of facts from the facts presented in the Ivey case, *supra*. It is settled that a statute may be invalid as applied to one state of facts and yet valid as to another.

BROWN, J., concurs.