386 So.2d 550 (1980)
RESERVE INSURANCE CO. et al., Appellants,
v.
GULF FLORIDA TERMINAL CO. et al., Appellees.
GULF FLORIDA TERMINAL CO. et al., Petitioners,
v.
MISSOURI MEAT CO. et al., Respondents.
Nos. 54522, 54563.
Supreme Court of Florida.
July 24, 1980.
W.M. Carson and Gary W. Nicholson of Carson & Guemmer, Tampa, for appellees/petitioners.
William F. McGowan, Jr. of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for Missouri Meat Company, Booth Fisheries, Four Star Meat Products Company, Chicago Dressed Beef Co., Inc. and Arrow Beef Corp.
A.J. Melkus of Carver, McCarthy & Melkus, Lakeland, for Orleans International, Tushman, Heritage Trucking and The Home Insurance Co.
Counsel for appellants, Reserve Insurance Company, filed a motion to withdraw as counsel of record, and said motion was granted.
PER CURIAM.
These consolidated cases are before this Court for certiorari review of an interlocutory order of the Circuit Court, Thirteenth Judicial Circuit, which declared section 677.403(1)(b), Florida Statutes, unconstitutional. Because the interlocutory order would be directly appealable to this Court upon final judgment, we have jurisdiction. Art. V, § 3(b)(3), Fla. Const. (1972). For the reasons set out below, we reverse the trial court's order.
In September 1974, an ammonia gas leak occurred at a cold storage warehouse owned by Gulf Florida Terminal Company. The leak allegedly damaged food products owned by several meat companies and stored with Gulf Florida. Each meat company, as a bailor, sued Gulf Florida for negligence, claiming damages in excess of $10,000. By motion the plaintiffs requested *551 that section 677.403(1)(b) be declared unconstitutional and that the trial be conducted under the statute as it existed prior to amendment in 1971. Finding that this statute created an impermissible classification between bailors and that, therefore, the statute violated the equal protection clause of the fourteenth amendment to the United States Constitution and the equality clause of the Declaration of Rights of the Florida Constitution, the trial judge granted the motion.
Under the common law a bailor could establish a prima facie case of negligence by showing that goods were not returned in the same condition as they were delivered; however, the bailor continued to have the burden of proving his case by the preponderance of the evidence. Marine Office-Appleton & Cox Corp. v. Aqua Dynamics, Inc., 295 So.2d 370 (Fla.3d DCA 1974); Adelman v. M & S Welding Shop, 105 So.2d 802 (Fla.3d DCA 1958). See Stegemann v. Miami Beach Boat Slips, 213 F.2d 561 (5th Cir.1954). In 1965 Florida adopted most of the provisions of the Uniform Commercial Code.
Section 677.403(1)(b) as originally enacted changed the common law rule by providing:
(1) The bailee must deliver the goods to a person entitled under the document who complies with subsections (2) and (3), unless and to the extent that the bailee establishes any of the following:
* * * * * *
(b) Damage to or delay, loss or destruction of the goods for which the bailee is not liable.
This language was adopted verbatim from the official text of the Uniform Commercial Code, section 7-403(1)(b). The provision requires that a bailee prove that he acted with reasonable care in both negligence and contract cases. Low v. Park Price Co., 503 P.2d 291 (Idaho 1972); Canty v. Wyatt Storage Corp., 208 Va. 161, 156 S.E.2d 582 (1967). See also Anderson, Uniform Commercial Code § 7-403:5 (1971).
In 1971 the legislature amended section 677.403(1)(b) to read as follows:
(b) Damage to or delay, loss or destruction of the goods for which the bailee is not liable, but the burden of establishing negligence in such cases when value of such damage, delay, loss, or destruction exceeds $10,000 is on the person entitled under the document.
This amendment shifted the burden of proving a bailee's negligence back to those bailors sustaining losses of more than $10,000, but left the burden of proving no negligence to the bailee when the bailor's losses were less than $10,000. This enactment must be reviewed to determine whether the monetary damage classification has a reasonable relation to a permissible legislative objective. If such relationship exists, there is no violation of the equal protection clause. Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla. 1974).
The official text of the Uniform Commercial Code (1962) provides an optional clause that can be added to section 677.403(1)(b), "but the burden of establishing negligence in such cases is on the person entitled under the document."[1] The 1971 legislature had for consideration a bill, similar to the official optional clause, which would have changed prior law by shifting to the bailor the burden of proving negligence with respect to the loss or destruction of bailed goods. Several members of the House of Representatives, however, expressed concern for so-called "mom and pop bailors," i.e., individuals who might store household goods or furniture in a warehouse which is damaged or destroyed and who would lack the financial resources to investigate and litigate the cause of their loss. The legislature resolved this concern by establishing an arbitrary line  $10,000 in damages  between those for whom the burden of proof would be changed and those for whom it would not. The legislature obviously *552 thought this line of demarcation would, in general, protect a class of persons whose goods are valued at less than that amount.[2]Cf. Engel v. O'Malley, 219 U.S. 128, 138, 31 S.Ct. 190, 193, 55 L.Ed. 128 (1911) (Justice Holmes sustaining a $500 transaction exemption from the requirement of licensing in certain monetary transactions on the ground that the legislature may "confine the law as nearly as may be to the class thought by the legislature to need protection").
The legislature possesses wide latitude in devising classifications which regulate commercial transactions. Broad enough, in fact, to classify based upon the financial resources of the parties and the amount involved in the transaction. See e.g., Fla. Stat. (1977), § 516.031 (consumer financing not to exceed $2,500); § 520.08 (motor vehicle sales finance); § 520.34 (retail installment contracts); § 520.35 (revolving accounts); § 656.17 (industrial savings banks); § 657.14 (credit unions); § 659.18 (commercial banks  loans not in excess of $15,000); § 659.181 (commercial banks  credit cards); § 687.02 (loans to individuals in excess of $500,000). Cf. Cesary v. Second Nat'l. Bank of North Miami, 369 So.2d 917 (Fla. 1979) (validity of legislative classifications relating to permissible rates of interest).
This establishment of a cutoff point for "mom and pop bailors" is rational because the legislature could reasonably conclude that such bailors would likely lack the resources to investigate and ascertain the cause of loss when related to the amount involved. It is, therefore, rational and proper for the legislature to place the burden on the bailee to come forward with evidence of due care as to this class of bailors. It is not the Court's concern where the line was drawn, of course, nor whether it achieved the legislative goal precisely or only by approximation. Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918); Davis v. Florida Power Co., 64 Fla. 246, 60 So. 759 (1913). See North Ridge General Hospital v. City of Oakland Park, 374 So.2d 461 (Fla. 1979). The equal protection challenge ends with a finding of rationality for drawing the line.
We hold section 677.403(1)(b), Florida Statutes, to be constitutional and remand these consolidated cases to the circuit court for further proceedings.
SUNDBERG, C.J., and ADKINS, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
I dissent from the Court's decision because I believe there is no rational basis for requiring bailors suffering losses in excess of $10,000 to bear the burden of proving the bailee's negligence, while leaving the burden of disproving negligence on bailees when the loss does not exceed that amount. I agree with the majority that the legislature "possesses wide latitude in devising classifications which regulate commercial transactions." However, the classification in this case is not so much concerned with commercial transactions as it is with trial procedure.
This Court has struck down several statutes which have provided different standards of proof to the same class of litigants. Florida East Coast Ry. Co. v. Edwards, 197 So.2d 293 (Fla. 1967); Georgia Southern & Florida Ry. Co. v. Seven-Up Bottling Co. of Southeast Georgia, 175 So.2d 39 (Fla. 1965); Atlantic Coast Line Ry. Co. v. Ivey, 148 Fla. 680, 5 So.2d 244 (1941). The cited cases stand for the proposition that railroads are in the same class as other common carriers with respect to litigating negligence suits. In this case the only distinction drawn among the different litigant bailors is the amount of their claim. If railroads are not sufficiently different from other common carriers to justify different treatment with regard to standards of proof, then the amount of bailors' claims would seem to be *553 insufficient reason to justify the classification in this case.
I disagree with the view that the inference the legislature has drawn from the amount of a bailor's claim is reasonable. The amount of loss a bailor suffers may be entirely unrelated to the value of his wealth generally. It is unreasonable to presume that when damages exceed $10,000, the bailor is in a better position to underwrite the costs of investigating the incident than the bailee; the bailee may not have suffered any damages whereas the bailor definitely has. The only colorably reasonable inference that can be drawn from the amount of loss is that the greater a bailor's loss, the less able he is to bear the cost of investigation. This is completely opposite to the conclusion the legislature has drawn.
If it could be shown that persons storing goods worth more than $10,000 are better able to afford investigation than persons owning less valuable lots of goods  and this is the legislative conclusion which the majority declines to disturb because it contains some minimal degree of conceivability  I would still find the law unreasonable because it embodies a classification based on financial status. "Everyone is entitled to equal protection of the law, not just poor people." State v. Shipman, 360 So.2d 782 (Fla. 4th DCA 1978).
I would affirm the trial court's decision and hold chapter 71-292, section 1, Laws of Florida, unconstitutional.
NOTES
[1] Florida did not originally adopt this optional language because it was not "in harmony with established Florida jurisprudence." 19B Fla. Stat. Ann., Comment § 677.7-403 at 616 (1966). At the present time, some sixteen states, including Florida, have adopted the optional language or a modification thereof.
[2] This chronology of legislative history is borne out by the 1971 Journal of The Florida House of Representatives at pages 381 and 1092 through 1093.