NESBITT, Senior Judge.
The Marvin and Kay Lichtman Foundation (herein, the Foundation), beneficiary of the Marvin Lichtman Living Trust (herein, the Trust), appeals the awards made to the two personal representatives of the estate of Marvin Lichtman, the awards made to the same two persons acting as trustees for the Trust, and the award made to the attorney who acted as counsel for the trustees. We affirm in part, reverse in part, and remand for further proceedings.
Marvin Lichtman and Kay Lichtman were murdered on January 23, 1996, and their Illinois home was burned to the ground. The couple’s murder was the subject of an extensive criminal investigation and national media coverage. Pursuant to the provisions of Mr. Lichtman’s Will and his Trust, June Hood and Edward Ham-matt were appointed trustees of the Trust and co-personal representatives of Mr. Lichtman’s estate.[1] Mr. Lichtman’s estate was to be distributed to the Trust. The Trust provided that after payment of $600,000 in specific gifts, the remaining assets passed to the Foundation, which Mr. Lichtman and his wife had established.[2]
According to the personal representatives, because of the circumstances of Mr. Lichtman’s death, they were immediately confronted with numerous issues including the recovery of insurance proceeds, and cooperating in the murder investigation. The fiduciaries and their counsel also contended with national media coverage. Loss of financial records in the fire required Hood, Hammatt and their counsel, Sol Stiss, to reconstruct the affairs of Mr. Lichtman. Testimony was presented to the trial court on the issues facing the trustees/co-personal representatives and their resolution of these issues.[3] The fiduciaries were able to locate and marshal assets through review of brokerage statements, credit card statements, tax returns, computer materials, home videos, insurance policies, and checkbooks and obtained from Mr. Lichtman’s casualty insurer $1,409,000.00 for the destroyed home[4] and $1,409,000.00 in insurance proceeds for the contents of the home.[5] The personal rep *1234 resentatives completed their duties and served a Petition for Discharge and final accounting.[6]
Simultaneously, Hood and Hammatt, in their capacities as trustees, served their interim accounting. It was thereafter that the Foundation served its Beneficiary’s Objection to Petition for Discharge and Final Accounting and Objection to compensation. These objections addressed the accountings of the personal representatives as well as interim accounting of the trustees. The objections to both account-ings were heard by the trial judge.
The fees of the personal representatives and their attorney, Stiss, were calculated pursuant to sections 783.617 and 733.6171 Florida Statutes (1999). Hood and Ham-matt were awarded $82,407.85 each for their services as personal representatives. The Foundation contended that this award is improper and argued that section 733.617(5)[7] violates the equal protection and due process clauses of the Florida and United States Constitutions, as permitting double compensation for the same work. The trial court also awarded Hood and Hammatt, $50,000.00 each, as trustees. The Foundation challenged this award on the ground that there was no evidentiary basis to support the award. The Foundation did not appeal the award of $177,708.10 for attorney Stiss’ services as counsel to the personal representatives, however the Foundation did argue that based on the lack of evidentiary support, Stiss should not have been awarded $55,000.00 for his services as counsel for the trustees.
We find no merit to the Foundation’s claim that an award of a full fee to each personal representative violated the beneficiary’s right to due process or equal protection. The legislature has the authority to create classifications based upon financial resources for the amount involved in a transaction. See Reserve Insurance Co. v. Gulf Florida Terminal Co., 386 So.2d 550 (Fla.1980). The Foundation was afforded notice and opportunity to be heard as provided by the statute. See § 733.617(7)Fla. Stat. (1999)[8].
*1235 We do agree however that while it is clear work was done by the trustees, there was no separate evidentiary basis for the trial court’s award of $50,000 fees to the two trustees. No testimony or documentary evidence supported the figure arrived at by the court. Likewise, without evidentiary basis was the award of $55,000 to Stiss, as attorney for trustees. While the breadth as well as intricacies of the matters handled by these parties support awarding payments for the services they rendered, without evidence as to actual work performed or the amount of time spent, we cannot review such determinations. See Jones v. Dunning, 661 So.2d 941 (Fla. 5th DCA 1995)(remand was required for new order citing record support for awards); Moyle v. Moschell & Moschell, 582 So.2d 111 (Fla. 3d DCA 1991).
Accordingly, we affirm the fees awarded the personal representatives and vacate the awards to the trustees, as well as the attorney acting for the trustees. We remand for reconstruction of the record to afford a sufficient breakdown and allocation and apportionment of the work done in relation to the dual functions performed, so that we, as the reviewing body, can ascertain if there has been an error. See Dhondy v. Schimpeler, 528 So.2d 484 (Fla. 3d DCA 1988)(ordering remand where fee could not be properly assessed based wholly on a conclusory affidavit).
Affirmed in part, reversed in part, and remanded.

. Mrs. Lichtman's personal representative was her niece, Barbara Higgason. Mrs. Lichtman’s will left all of her jewelry, clothing, and furs to Higgason to distribute among Higgason's sisters in accordance with Mrs. Lichtman's instructions. Mrs. Lichtman’s will devised the remainder of her estate to the Trust. The destruction of the jewelry, furs, and clothing in the fire created a dispute between the estate and the Trust.

. At the time of the trial, approximately $7,000,000 had been distributed to the Foundation and $600,000 to friends and relatives.

. Hood, Hammatt and Stiss also contended with Mrs. Lichtman's dissatisfied nieces. The Higgason nieces engaged in a series of actions designed to increase the value of their bequest, including their efforts to prevent the admission of Mr. Lichtman's will to probate. The nieces also filed a claim against the estate for $600,000.00 for the destroyed personal property. The nieces then filed proceedings against the fiduciaries contesting the validity of a codicil to Mr. Lichtman’s will and the validity of an amendment to his Trust.
The nieces also entered Mr. Lichtman's Illinois safe deposit box and removed its contents, requiring the initiation of proceedings to recover the property. The nieces contended that they were entitled to eighty-five percent (85%) of the $1,409,000.00 recovered by the fiduciaries for the loss of the contents of the destroyed home. Hood and Hammatt vigorously disputed this contention, prompting the insurer to threaten to interplead the funds. Proceedings were then commenced by the fiduciaries against Higgason to compel production of information relating to the claimed interest. Higgason filed a federal estate tax return that was inconsistent with Mr. Lichtman’s estate tax return and which according to the personal representative economically prejudiced the Trust, which if upheld, would have lost approximately $1,700,000. Ultimately, the disputes with Higgason were resolved.

. The fiduciaries also recovered $60,000.00 for the loss of the rental value of the destroyed home and $36,000.00 for destroyed landscaping.

. Hood and Hammatt also pursued and litigated a claim for refund of Illinois state income taxes, penalties, and interest. The total *1234 amount of the claim for refund exceeded $221,000.00, including penalties and interest. The claim for refund was ultimately denied.

. The final accounting reflected that $3,048,000.00 had been marshaled by the personal representatives.

. Subsection 733.617(5) provides:
If the probate estate’s value as defined in subsection (1) is $100,000 or more, and there are two representatives, each personal representative is entitled to the full commission allowed to a sole personal representative. If there are more than two personal representatives and the probate estate’s value is more than $100,000, the compensation to which two would be entitled must be apportioned among the personal representatives. The basis for such apportionment shall be one full commission allowed to the personal representative who has possession of and primary responsibility for administration of the assets and one full commission among the remaining personal representatives according to the services rendered by each of them respectively. If the probate estate's value is less than $100,000 and there is more than one personal representative, then one full commission allowed herein to a sole personal representative must be apportioned among the personal representatives according to the services rendered by each of them respectively.

.Subsection 733.617(7) provides:
The compensation for a personal representative as set forth in subsections (2) and (3) may, upon petition of any interested person, be increased or decreased by the court. In determining whether to increase or decrease the compensation for ordinary services, the court must consider each of the following factors, giving each such weight as it determines to be appropriate:
(a) The promptness, efficiency, and skill with which the administration was handled by the personal representative;
(b) The responsibilities assumed by and the potential liabilities of the personal representative;
(c) The nature and value of the assets that are affected by the decedent’s death;
(d) The benefits or detriments resulting to the estate or its beneficiaries from the personal representative's services;
(e) The complexity or simplicity of the administration and the novelties of the issues presented;
*1235 (f) The personal representative’s participation in tax planning for the estate and the estate’s beneficiaries and in tax return preparation, review, or approval;