116 So.2d 28 (1959)
Eva UTLEY, Appellant,
v.
SOUTHERN METAL PRODUCTS CO., Inc. and Connie Henderson, Appellees.
No. 730.
District Court of Appeal of Florida. Second District.
November 18, 1959.
Rehearing Denied December 16, 1959.
Paty, Downey & Daves, West Palm Beach, for appellant.
Jones, Adams, Paine & Foster, West Palm Beach, for appellees.
SHANNON, Judge.
Eva Utley and her husband Willard Utley filed their separate appeals from jury verdicts rendered in a negligence action. Eva Utley received a verdict in the amount of $5,000, and her husband received nothing. Both of them appealed and their appeals were consolidated for argument.
The plaintiff Eva Utley has assigned eleven points, but on ten of these we find no reversible error. The first point, relating to the inadequacy of her verdict, has given us more concern. From the record it appears that the accident giving rise to this action occurred at about 7:30 P.M. on October 7, 1956, a dark, rainy, and windy night with gusts of rain and wind. The plaintiffs were driving south on Military Trail in Palm Beach County. Willard Utley was driving, and his wife Eva Utley was riding beside him on the front seat. The car in which they were riding was owned by Eva Utley. A truck owned by the defendant Southern Metal Products Co., Inc. had been operated by one of its employees, Connie Henderson, and was at the time of the accident parked in the south bound lane of traffic, headed in a northerly direction, with two flat tires. Flares were posted, although the testimony of witnesses varies as to their distance from the truck. The headlights of another car going north just before the impact momentarily blinded Willard Utley. When Utley first saw the flares and the truck, he was too close to *29 them to bring his car under control and stop, and hence the accident occurred.
In the complaint were allegations of negligence on the part of the defendants. The defendants denied negligence and charged both the plaintiffs with contributory negligence.
Eva Utley is a housewife and at the time of trial was fifty-five years of age with a life expectancy of 17.78 years. In the accident she received a deep cut on the forehead requiring several stitches, a crushing of her hip socket, and injury to her knee. At the time of trial she had a shortening of one leg and a bad hip necessitating her wearing a shoe raised three-fourths of an inch. Also she received injury to her right arm and hand so that her hand shook constantly. She developed atrophy in her right arm muscle and the right thigh muscle. She had an abduction of her right hip of thirty degrees and an abduction of her left hip of forty-five degrees. She also had a limitation of motion of the internal rotation and external rotation of the right hip, which had apparently caused a certain amount of arthritis. One doctor testified that she had fifty per cent permanent partial disability to her right hip, while another doctor testified to seventy-five per cent. She had suffered great pain and, according to the medical testimony, she still suffered pain in her hip and knee. Her hospital and medical expenses in the amount of $2,024.34 were paid by her husband and were not included in her suit. There is much testimony going to the point of whether plaintiff, by refusing to have an open reduction of the hip on account of her religious beliefs, contributed to the severity of her injury. The medical testimony going to this point shows that two courses of medical treatment were open to plaintiff, either an open reduction or conservative treatment. Her attending physician testified in part as follows:
"Q. Well, Doctor, wasn't one of the prime considerations in electing to follow the procedure that was followed, the lady's religious beliefs and wishes herself? A. Well, not necessarily alone. Actually, if that had been the only primary consideration, a very definite stand would have been made and patient would have been told very strenuously that they could expect a very poor result if they refused an open operation. I sincerely thought at the time that we could get by without having to open up the hip and replace the fragment and fix it with a screw.
"Q. That was your feeling on October 8th when you first saw her, 1953? A. Yes, sir, that and probably subsequently, until the time of her circulatory collapse on 11/3, I believe."
In view of the doctor's testimony that it was his belief in the first instance that conservative treatment would be adequate, we cannot hold that the plaintiff's beliefs helped to produce the injuries which she sustained.
And so we come to the primary question of whether the jury gave plaintiff an inadequate sum. As stated in 9 Fla.Jur., Damages § 100, the general law in Florida is:
"A verdict for grossly inadequate damages stands on the same ground as a verdict for excessive or extravagant damages, and may be set aside on this ground either on appeal, or by the trial court on motion for a new trial. Such verdicts will not be set aside for the mere reason that they are less than the court thinks they should be,  that is, merely because the judge would have awarded a larger amount. It must be shown that the verdict was induced by prejudice or passion, some misconception of the law or the evidence, or that the jury did not consider all the elements of damage involved, missed a consideration submitted, or failed to discharge their duty as given them by the court's charge."
*30 In Allen v. Powell, 1943, 152 Fla. 443, 12 So.2d 378, 379, it is stated:
"Under the law of this State, a motion for new trial on the ground of inadequate damages stands in exactly the same position as a motion for new trial on the ground of excessive damages. Under both the early English and American Common Law, new trials were never granted for inadequacy of damages but the universal trend of modern decisions is to place them on the same footing. American Jurisprudence, Volume 39, page 153."
The question here, therefore, is not whether the verdict is such a sum that had this court been sitting as a trier of the case, we would have given a greater sum, but whether the verdict "was induced by prejudice or passion, some misconception of the law or the evidence, or that the jury did not consider all the elements of damage involved." We can speculate as to how the jury arrived at its verdict, but that is beside the point in this case. As stated by Judge Allen of this Court in the case of Andrews v. Cardosa, Fla.App. 1957, 97 So.2d 43, 46:
"* * * The test is not what an Appellate Court would have decided had they tried the case, but whether or not they can say, after viewing the case, that the jury as reasonable men could not have found the verdict which they did. * * *."
While we cannot say that the verdict was induced by prejudice or passion, it is obviously in such an amount that the jury must have labored under a misconception of the law or the evidence, or that they did not consider all the elements of damage involved. Sorg v. Royal, Fla. 1949, 41 So.2d 317.
While the plaintiff argues that this case should be sent back on the question of damages alone, we think that the ends of justice will be best served by reversing this case and sending the same back to be tried on the question of liability and the question of damages.
Reversed.
KANNER, Acting Chief Judge, and STEPHENSON, GUNTER, Associate Judge, concur.