129 So.2d 439 (1961)
Marie D. POIRIER, Appellant,
v.
Sam SHIREMAN, Appellee.
No. 1730.
District Court of Appeal of Florida. Second District.
April 14, 1961.
*440 Richard R. Kirsch, of Davis, Kirsch & Gorman, Fort Lauderdale, for appellant.
Norman C. Roettger, Jr., of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellee.
SHANNON, Judge.
The plaintiff appeals from a judgment, following a jury verdict, in a negligence action against the defendant.
The plaintiff filed her complaint, alleging that she was injured as a result of the negligence of the defendant in the operation of his automobile. The defendant's answer denied any negligence and alleged that plaintiff was guilty of contributory negligence. There was a jury trial which resulted in a verdict for the plaintiff in the amount of $1,246. The plaintiff moved the lower court for a new trial on the grounds that the verdict was inadequate and that the court, over the plaintiff's objection, had given an improper instruction to the jury. The instruction was:
"You are instructed that any award made to Plaintiff as damages in this case, if any award is made, is not subject to federal or state income taxes, and you should not consider such taxes in fixing the amount of any award made Plaintiff, if any you make."
After her motion for new trial was denied and the final judgment entered, the plaintiff appealed on the grounds that the verdict was inadequate and that the jury instruction given by the trial court, as set out above, was improper.
We shall first consider whether the jury verdict was so inadequate as to require reversal. See Breitbart v. State Road Department of Florida, Fla.App. 1959, 116 So.2d 458; Utley v. Southern Metal Products Co., Fla.App. 1959, 116 So.2d 28; and Allen v. Powell, 1943, 152 Fla. 443, 12 So.2d 378. Plaintiff's evidence shows that she was injured in the accident and suffered a blow on the head, which rendered her unconscious, and received injuries to her knee, arm and neck. Plaintiff's local doctor testified that his examination of the plaintiff revealed:
1. A contusion with a hematoma of the right knee.
2. Contusions and abrasions of the forehead.
3. Contusion of the left shoulder.
4. A possible cerebral concussion.
5. A sprain of the right ankle.
Following the accident, which occurred on January 16, 1959, the plaintiff remained in the hospital until January 23, 1959, after which time she was seen by her local doctor every day until May, 1959, when she left for Connecticut. There she was also under a physician's care. This physician treated her from June 13, 1959, until August 23, 1959. The doctor in Connecticut gave a diagnosis of her condition, which, in addition to the conditions already set forth, showed the following:
1. Sprain of the left shoulder girdle.
*441 2. Contusion and large hematoma right knee joint with about 20% limitation on bending of right knee joint.
3. Unresolved hematoma right knee joint.
4. Sinus formation from traumatic hematogenous cyst right knee joint.
5. Periostitis right knee.
At the trial her doctor expressed an opinion that the plaintiff had a 50% disability, which, in the doctor's opinion, would improve by 40%, and that she would have a permanent partial disability of 10% of the knee, and approximately 3% of the body as a whole.
An orthopedic surgeon, who was appointed by the court, at the request of the defendant, testified that he examined the plaintiff on November 30, 1959, and made the following diagnosis:
1. That the plaintiff had a strain of the neck which was still causing some symptoms of stiffness and discomfort.
2. That she had a painful right shoulder which had otherwise a normal range of motion.
3. That she had a draining sinus of the right knee at the site of a hematoma which was drained and became infected and had formed a chronic sinus.
It was also this doctor's opinion that with some minor surgery of the knee the plaintiff should make a complete recovery and have no permanent disability. As to her ability to work, this physician on cross-examination stated:
"Q. Do you feel during the past year that she was able to take on and carry on that work? A. I don't know that I can answer that, sir. I think perhaps if it was a situation of desperate economic necessity, Mrs. Poirier might have been able to do more than she has, but I think if she tends to be a nervous individual and there was not the desperate economic necessity of it, she would elect not to do it."
And the doctor also expressed his opinion in the following:
"Q. Would that change your opinion as to the future medical treatment she will require as to the surgical exploration of that area? A. It is really hard to tell. It may stay closed or it may open. The surgical procedure would be very minor. It is nothing much more than scratching the end of a nail.
"Q. Is hospitalization necessary? A. Some may want to do it in the office or in the hospital.
"Q. How long would the patient be in the hospital? A. The patient probably would not be admitted. She probably could go in and then go home or stay overnight. It is not a sizable procedure."
On the day of the accident the plaintiff had just been employed as a domestic supervisor at Holy Cross Hospital at an annual salary of $3,500. It was shown in the evidence that her income for the preceding years was: 1958  $931.50; 1957  $539.68; 1956  $2,700; 1955  $1,103. In 1956, the evidence shows, the plaintiff was in partnership with her husband running a convalescent home in Connecticut, and that one-half of the income was credited to her. The record also indicated that she worked at four different places during 1958, and there was no evidence that she had worked at all during 1959, prior to the date that she was injured. It is necessary to keep in mind that her husband is not joined with plaintiff in this case and hence she did not claim medical expense, but sued only for pain and suffering and loss of earnings.
In light of the facts in Utley v. Southern Metal Products Co., Fla.App. 1959, 116 So.2d 28, wherein the inadequacy of the verdict was plainly discernible from a study of the *442 record, the instant case is not one in which we can say that the verdict was induced by passion or prejudice, nor can we say that it is in such an amount that the jury must have labored to a misconception of the law or the evidence or that they did not consider all of the elements of damages involved. We, therefore, hold that the verdict was not so inadequate as to require reversal.
In her second point the plaintiff contends that the court erred in charging the jury over her objection, as follows:
"You are instructed that any award made to Plaintiff as damages in this case, if any is made, is not subject to federal or state income taxes, and you should not consider such taxes in fixing the amount of any award made Plaintiff, if any you make."
This instruction is identical with the instruction recommended by the Supreme Court of Missouri in the case of Dempsey v. Thompson, 1952, 363 Mo. 339, 251 S.W.2d 42, 45. In the Dempsey case the giving of the instruction was held to be cautionary and hence the court did not reverse the verdict based upon the fact that such instruction was refused, but said:
"Can there be any sound reason for not so instructing the jury? We can think of none. Surely, the plaintiff has no right to receive an enhanced award due to a possible and, we think, probable misconception on the part of a jury that the amount allowed by it will be reduced by income taxes. Such an instruction would at once and for all purposes take the subject of income taxes out of the case.
"We are now convinced and hold that an instruction substantially in the form above outlined should have been given in this case, and that the case of Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675, insofar as it is in conflict with the ruling here made, should no longer be followed.
"We are constrained to hold, however, that the case should not be remanded for a new trial. The refused instruction was a cautionary one, the giving or refusal of which is generally held to be within the discretion of the trial court * * *"
In answer to the Dempsey case the plaintiff relies heavily on the case of Hall v. Chicago & North Western Ry. Co., 1955, 5 Ill.2d 135, 125 N.E.2d 77, 86, 50 A.L.R.2d 661. This case was decided subsequent to the Dempsey case and the reasoning therein was not followed by the court in the Hall case, as will be noted from the following excerpt, where the court says:
"The defendant has cited Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42, wherein the Missouri Supreme Court held that it was proper to instruct the jury that an award was not subject to Federal income tax. For the reasons stated herein, we disagree with the conclusion reached by that court. * * *
"We are of the opinion that the incident of taxation is not a proper factor for a jury's consideration, imparted either by oral argument or written instruction. It introduces an extraneous subject, giving rise to conjecture and speculation."
The Hall case was followed by Wagner v. Illinois Central Railroad Co., 1955, 7 Ill. App.2d 445, 129 N.E.2d 771.
In the case of Highshew v. Kushto, 1956, 126 Ind. App. 584, 131 N.E.2d 652, 133 N.E.2d 76, the Appellate Court of Indiana followed the Missouri case of Dempsey v. Thompson, supra, but the case was later transferred to the Supreme Court of Indiana, and in its opinion, 235 Ind. 505, 134 N.E.2d 555, 135 N.E.2d 251, the court declined to follow the Dempsey case, but explicitly stated that it would follow the decision in Hall v. Chicago & North Western Ry. Co., supra. Also following the decision of the Hall case are the courts of Texas, Iowa, Minnesota, Kansas and Montana.
*443 Plaintiff takes the position that the instruction in the instant case has been rejected by almost every court in which this question has arisen. She also cites 63 A.L.R.2d 1393, where a number of cases are annotated.
The defendant has cited many cases, most of which arose during the last few years, that are contrary to the line of thought expressed in Hall v. Chicago & North Western Ry. Co., supra. He has also cited us several articles in leading legal publications as well as in text books. A particularly well-reasoned article which he cites is one written by Morris and Nordstrom, "Personal Injury Recoveries and the Federal Income Tax Law," 46 A.B.A.J., 274 (1960). In speaking of the basic problem raised by either giving or not giving such an instruction, the authors say:
"It was not until 1944 that either of these ideas was urged on an American court. In that year both were tried; both failed. But the increasing tax burden made it clear that this was not to be the end of the attempts. The purpose of this article is to examine the recent opinions and the theory on which they rest, with the hope that some of the confusion which lies behind them can be cleared away."
Then the authors go on to say:
"The first portion of our problem centers around whether the jury can be told (either by instruction or in closing argument) that the plaintiff will not have to pay income tax on the award, thus preventing it from adding an amount which it may erroneously believe is due for taxes. * * *
* * * * * *
"* * * All that is involved is an instruction or charge of two or three sentences at the close of the trial.
* * * * * *
"If we are to believe the words of most opinions, these sentences are refused because the court has confused the problem of this section of this article with that of the introduction of evidence. * * *"
There are three principle reasons why some courts still follow the decision in Hall v. Chicago & North Western Ry. Co., supra, and, as set forth in the article above referred to, these are:
"(1) It introduces `extraneous' matters.
"(2) It is `cautionary' in nature.
"(3) It assumes that, but for it, the jury would award damages which did not follow the general measure of damages."
After giving their reasons as to why they disagree with the reasoning under these three categories, the authors state:
"This is the crux of the problem. Can we assume that the jury will follow the general charge and leave behind its common knowledge of tax impact? Or is it more logical to believe that taxes are so commonly known that it becomes necessary to caution the members of the jury that the money given in this case is `different' in that it is probably the only example they will ever know of non-taxed dollars?"
As for persuasive authority since the Hall case, supra, a United States District Court case from California, Anderson v. United Air Lines, Inc., 1960, 183 F. Supp. 97, 98, gives a careful analysis of both sides of the question and holds that the giving of the controversial instruction is discretionary. In so holding the court stated as follows:
"The weight of authority indicates that it is a matter of discretion whether to give the instruction. No good reason for not giving it has been suggested. The reasons given by the cited writers who have commented upon the merits of the subject are good. The court is aware of only one reported appellate court decision which directly *444 holds that it is error to give such an instruction * * *."
Incidentally, that court also, in so holding, cited a great many cases as authority for the proposition that this instruction is discretionary:
"Atherley v. MacDonald, Young and Nelson, Inc., 1956, 142 Cal. App.2d 575, 298 P.2d 700; New York Central Railroad Company v. Delich, 6 Cir., 1958, 252 F.2d 522; Combs v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., D.C.N.D.Iowa, 1955, 135 F. Supp. 750; Mitchell v. Emblade, 1956, 80 Ariz. 398, 298 P.2d 1034; annotation, 63 A.L.R.2d 1393 (1959).
"Dempsey v. Thompson, 1952, 363 Mo. 339, 251 S.W.2d 42, 45."
Before we leave this point, we will mention the case of McWeeney v. New York, New Haven & Hartford R.R. Co., 2 Cir., 1960, 282 F.2d 34, 39, certiorari denied 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93, in which it is stated:
"Request No. 17, which Judge Weinfeld also declined to give, was to instruct the jury not to `add any sum of money to the amount of the verdict on account of federal or state income taxes, since the amount awarded to the plaintiff by your verdict is not taxable income to the plaintiff within the meaning of these tax laws.' This correctly states the law, Int.Rev.Code of 1954, § 104; N.Y.Tax Law, § 359(2) (e). Unlike Request No. 18, it imposes no new burdens on the jury and there is nothing speculative about it. Hence there would have been no error in the court's giving the instruction. The question before us is not that but whether the failure to give it was error, and error so serious as to require a new trial.
"We do not think so * * *."
The McWeeney case, supra, was argued before three judges, but in view of the fact that there was dissent among them, it was referred to the court en banc:
"Since similar issues arise frequently in trials in this Circuit, we referred the case to the court in banc, 28 U.S.C. § 46(a), which has considered it on the record and briefs previously submitted * * *."
It is interesting to note the disagreement in this case wherein Judge Moore concurs with the dissenting Chief Judge Lumbard. In his dissent, Chief Judge Lumbard says:
"I would reverse the judgment because of the refusal of the trial judge to charge Request No. 17 which was designed to advise the jury that any sum awarded the plaintiff is not subject to tax.
"The purpose of damages is to compensate the plaintiff for losses which he has suffered to the time of trial and may reasonably be expected to suffer in the future. The plaintiff is entitled to have the jury instructed as to every item of loss, which includes reasonable medical expenses, loss of earnings past and future and pain and suffering past and future. On the other hand, the defendant, who must pay the damages, is entitled to have the jury instructed in such wise that it will make its calculations in the light of a proper understanding of what the plaintiff should receive in order to make him whole. The plaintiff should receive no more than that at the defendant's expense. The defendant is entitled to a charge which will direct the jury's attention to every item and consideration which may substantially reduce the plaintiff's loss so that the jury does not charge the defendant with a loss which the plaintiff would never have to suffer. Even handed justice requires nothing less than this."
In the present case the judge below gave this particular instruction, and, on this *445 question and on these facts, we hold that the lower court was not in error.
Affirmed.
ALLEN, C.J., and SANDLER, HARRY N., Associate Judge, concur.