175 So.2d 39 (1965)
GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY, a corporation, Appellant,
v.
SEVEN-UP BOTTLING COMPANY OF SOUTHEAST GEORGIA, Inc., a corporation, Appellee.
No. 33343.
Supreme Court of Florida.
May 12, 1965.
Mathews, Osborne & Ehrlich, Jacksonville, for appellant.
Howell, Kirby, Montgomery & Sands, Jacksonville, for appellee.
Charles S. Ausley, of Ausley, Ausley, McMullen, O'Bryan, Michaels & McGehee, Tallahassee, for amicus curiae.
ROBERTS, Justice.
This is a direct appeal from a judgment which, inter alia, passed directly upon the validity of Section 768.06, Florida Statutes, F.S.A., and held that it was immune to the attacks made thereon by the appellant.
The statute in question, sometimes known as the "comparative negligence" statute, provides that
"No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the plaintiff and the agents of the company are both at fault, the former may recover, but the amount of recovery shall be such a *40 proportion of the entire damages sustained, as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant."
The appellant railroad company concedes that, at the time of the statute's enactment in 1887, the Legislature, in the exercise of its police power and in the interest of public safety, could validly deal with what, at that time, "was the only commonly dangerous instrumentality operated in the state." It contends, however, that times have changed; and that a statute which is valid when enacted may become invalid by changes in the conditions to which it applies. This is unquestionably the law. See Atlantic Coast Line R. Co. v. Ivey, 1942, 148 Fla. 680, 5 So.2d 244, 139 A.L.R. 973; Caldwell v. Mann, 1946, 157 Fla. 633, 26 So.2d 788. And if the doctrine of "comparative negligence" as incorporated in the statute were being introduced at this late date as a brand-new concept of what the railroads' liability should be in this type of case, we have no doubt that the instinctive reaction of all persons  laymen and lawyers alike  to such a singling out of railroads for the imposition of such a burden would be one of surprise, shock, and a feeling that the Legislature had violated the rules of fair play. More importantly, we have the view that the public opinion thus hypothesized would be in accord with the organic requirements of "fair play" as preserved for us in the due process and equal protection clauses of the federal and Florida constitutions.
The purpose of the equal protection clause has been many times stated by this court, but never more simply or clearly than in Davis v. Florida Power Company, 1913, 64 Fla. 246, 60 So. 759, as follows:
"The inhibition that no state shall deprive any person within its jurisdiction of the equal protection of the laws was designed to prevent any person, or class of persons, from being singled out as a special subject for arbitrary and unjust discrimination and hostile legislation."
And, as stated in Seaboard Air Line Ry. v. Simon, 1908, 56 Fla. 545, 47 So. 1001, 20 L.R.A., N.S., 126,
"Like all other statutes imposing regulations, such laws should be based upon a just classification of persons and corporations with reference to the subject regulated, and such classification should not be purely arbitrary." (Emphasis added.)
The "subject regulated" by the statute in question is the liability of a railroad for damage done to persons and property by the running of its trains. The primary purpose of the regulation appears to be "to enforce a high degree of efficiency and care and to avoid negligence in rendering the public service involving the safety of persons and property * * *", quoting from the concurring opinion of Justice Whitfield in Loftin v. Crowley's, Inc., 1942, 150 Fla. 836, 8 So.2d 909, 142 A.L.R. 626. Again, in Grace v. Geneva Lumber Co., 71 Fla. 31, 70 So. 774, this court said:
"The statutory liability of railroad companies for damage done to persons and property by the running of the trains of such companies is predicated upon a classification having substantial basis in the dangers incident to the operation of railroad trains; * *."
See also Brahan v. Meridian Light & Ry. Co., 1919, 121 Miss. 269, 83 So. 467, in which the Mississippi Supreme Court was concerned with a "comparative negligence" statute of Mississippi applicable to all actions for personal injuries, and in which it was said:
"The evident purpose of this statute was to impose liability on persons whose negligence caused an injury to a person, even though such person might also be guilty of negligence, for the *41 purpose of compelling a high degree of care so as to protect life and limb, * * *."
The statute in question was enacted some ten years before the first patent was issued in this country for a gasoline-driven automobile. By 1906 there were only 296 cars in the entire state of Florida, Cash, The Story of Florida, Vol. 2, p. 537, and in 1912 only 25.4 miles of brick highway in the state. (See Archives of Florida State Highway Department.) By 1920, however, the dangerous character of a motor vehicle had become sufficiently known to persuade the court to apply to this "new instrumentality imminently dangerous to the persons using the public highways" the common-law rule respecting the liability of a master who entrusts a dangerous instrumentality to a servant. See Southern Cotton Oil Co. v. Anderson, 1920, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255. The court said:
"If a locomotive engine and a handcar are peculiarly dangerous when operated on a railroad track, certainly a motor car is peculiarly dangerous when operated on public highways."
Any doubt that this holding was to be limited to cases involving a master-and-servant relationship was dissipated by the decisions in Herr v. Butler, 1931, 101 Fla. 1125, 132 So. 815, and Crenshaw Bros. Produce Co. v. Harper, 1940, 142 Fla. 27, 194 So. 353. In the case last cited, the court said:
"In the light of our own former decisions, holding the motor vehicle to be a highly dangerous agency while in operation, it is but reasonable that we should attach thereto the law applicable to dangerous agencies, including the principle, applied to this particular case, that the driver of such dangerous agency, in this case a motor truck, is the vice-principal of his master, the owner, and that therefore in cases of this kind the fellow servant doctrine cannot be invoked as a defense."
As stated in Atlantic Coast Line Railroad Co. v. Ivey, supra, 148 Fla. 680, 5 So.2d 244, in holding unconstitutional the statute (enacted in 1899) authorizing the recovery of double the value of livestock killed on an unfenced railroad company right-of-way,
"It cannot be questioned that those transportation companies engaged as common carriers on the public roads and those so engaged on their privately owned roads such as railroad companies, owe like duties to the public and are under like obligations for the protection against accidents to life and property in conducting such business."
It would seem, therefore, that any regulation designed to compel a high degree of care on the part of those persons or corporations who render a public service involving the safety of persons and property should bear with equal force upon all such persons or corporations. In the early days of railroading, it may be that the company could absorb into its rate structure the financial burden imposed by the statute in question and pass it on to its customers; but under the present competitive conditions existing between rail and motor transports, such an unrealistic approach is untenable. And even if it were possible to do so, it would seem to be basically unfair to railroad customers to compel them to bear such a burden and, at the same time, leave free from such burden the large number of customers who avail themselves of motor and other competitive forms of transportation.
We have not overlooked the decision of this court in Loftin v. Crowley's, Inc., supra, 150 Fla. 836, 8 So.2d 909, 142 A.L.R. 626. There, in declining to strike down the statute in question, this court relied on decisions upholding statutes regulating railroads in various respects, none of which involved the regulation with which we are *42 here concerned; and in attempting to distinguish its decision, recently rendered, in Atlantic Coast Line R. Co. v. Ivey, supra, 148 Fla. 680, 5 So.2d 244, the court said that
"In that case we were dealing with a statute which imposed penalties on one class of common carrier which were not imposed on another class performing the same service in the same localities. * * *".
It may be that, twenty-three years ago when Loftin v. Crowley's was decided, the imposition of "comparative negligence" liability upon the railroads by the statute in question was not so unduly burdensome as to amount to a penalty; but today the situation is not the same, as the facts of the case sub judice demonstrate.
Here, a collision occurred between a train owned by the appellant railroad company and a truck owned by the appellee, a bottling company. As a result of the collision, the railroad company sustained damages of $3,000.00 and the damages of the bottling company were $3,250.00. Based on evidence from which the jury could find that each party was fifty percent at fault and under appropriate instructions from the judge, the jury returned a verdict denying the railroad's claim and awarding to the bottling company fifty percent of its claimed damages. Thus, under the impact of Section 768.06, the railroad company was compelled to stand its entire loss ($3,000.00) and, in addition, pay to the bottling company fifty percent of its damages ($1,625.00). To thus penalize the railroad company seems to us to be wholly arbitrary and contrary to the principles of law respecting the constitutional right of equal protection. Paraphrasing the language of this court in Seaboard Air Line Ry. v. Simon, supra, 56 Fla. 545, 47 So. 1001, 1005:
"The regulation does not cover a subject in which the duties of those who operate railroads legally differ from other common carriers * * *, and there appears to be no natural, practical, and substantial difference between railroads and other common carriers * * * with reference to the duty [to exercise a high degree of care in the operation of a dangerous instrumentality, whether it be a train or a motor vehicle common carrier.]"
For the reasons stated, we hold that Section 768.06, supra, although perhaps valid when enacted, has now become a discriminatory and burdensome exercise of the police power because of changed conditions; and that it is, therefore, invalid under the due process and equal protection clauses of the federal constitution and Section 12, Declaration of Rights, Florida Constitution, F.S.A.
Accordingly, the judgment appealed from is reversed and the cause remanded for further proceedings.
It is so ordered.
DREW, C.J., and THOMAS, THORNAL, O'CONNELL and CALDWELL, JJ., concur.
ERVIN, J., concurs specially with opinion.
ERVIN, Justice (specially concurring).
I am in thorough agreement with the foregoing opinion and judgment. It denotes that this Court has adopted a realistically modern concept of the doctrine of equal protection, which concept as an overall precedent of this Court should go far to preclude discrimination in many areas of activity in our state.