182 So.2d 491 (1966)
ATLANTIC COAST LINE RAILROAD COMPANY and Seaboard Air Line Railroad Company, Appellants,
v.
Bernard BRAZ, Appellee.
Nos. 64-1057, 64-1058.
District Court of Appeal of Florida. Third District.
January 25, 1966.
Rehearing Denied February 22, 1966.
*492 Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, for appellants.
Nichols, Gaither, Beckham, Colson & Spence; Alan R. Schwartz, Miami, for appellee.
Before CARROLL, BARKDULL and SWANN, JJ.
PER CURIAM.
Atlantic Coast Line Railroad Company and Seaboard Air Line Railroad Company, the defendants below, appeal the final judgments in a wrongful death action entered in favor of the plaintiff, Bernard Braz.
On October 29, 1963 an automobile driven by the plaintiff's twenty-six year old wife was involved in a collision at a railroad crossing with a passenger train of the Atlantic Coast Line Railroad Company, being operated over Seaboard Air Line Railroad Company tracks by a Seaboard crew. The plaintiff's wife and nineteen-month old daughter, who was also in the automobile, were killed instantly. The plaintiff husband brought two separate actions against the defendant railroads to recover damages for the wrongful deaths of his wife and daughter.
The defendants denied negligence and pleaded contributory negligence as a bar or in diminishment of damages under the comparative negligence statute, Section 768.06, Florida Statutes, F.S.A. The cases were consolidated for trial and resulted in verdicts of $185,000.00 for the death of the wife and $40,000.00 for the death of the child. Motions for a new trial were denied and this appeal was properly filed.
While this appeal was pending, the Supreme Court of Florida declared the comparative negligence statute unconstitutional in the case of Georgia Southern & Florida Ry. Co. v. Seven-Up Bott. Co., Fla. 1965, 175 So.2d 39. After the briefs had been filed, we permitted the filing of additional briefs on the question of whether the decision and opinion in Georgia Southern & Florida Ry. Co., supra, was controlling or applicable in this case.
The defendant's motions for new trial in the trial court and their assignments of error on appeal did not assert that the comparative negligence statute was invalid or unconstitutional. This case is therefore governed by the recent decision of this court in Florida East Coast Railway Company v. Rouse, Fla.App. 1965, 178 So.2d 882. There the court specifically rejected the "fundamental error" argument, as advanced herein, and held that since the constitutionality of the statute was not properly before the trial court, it could not be raised for the first time on appeal and the appellants could not successfully complain of error for which they were responsible or had invited. The facts of Rouse, supra, are essentially *493 the same as those here and the decision of Georgia Southern & Florida Ry. Co., supra, is therefor inapplicable.
We turn to the consideration of the defendants' points on appeal in the case subjudice alleging error, inter alia, as follows: (1) in permitting into evidence testimony from a Dr. Lassiter concerning the "value" of the deceased wife to the husband, in that it constitutes argument to the jury from the witness stand; (2) in permitting into evidence testimony as to the amount of money necessary to replace the wife's clerical service to the husband's corporation; (3) in not granting a mistrial because a newspaper article concerning Dr. Lassiter's testimony was prejudicial, inflammatory and misleading, and came to the attention of at least one juror; (4) in failing to charge the jury that an award to the plaintiff would not be subject to income tax and that the jury should not consider such taxes in fixing the amount of such an award; (5) that the verdict of $185,000.00 for the twenty-six year old deceased wife and $40,000.00 for the nineteen-month old deceased child were so excessive as to indicate bias, passion or prejudice so as to shock the judicial conscience; and (6) in not allowing an amendment to the pleadings to show a defense of contributory and/or comparative negligence as to the plaintiff's claim for the death of his child.
The question advanced by the defendants as to whether Dr. Lassiter's testimony constituted an invasion of the province of the jury has been previously considered and decided in the case of Millar v. Tropical Gables Corp., Fla.App. 1958, 99 So.2d 589. There the judgment of the trial court was reversed when it excluded the testimony of experts based on the ground that the testimony would be an invasion of the province of the jury and would require an opinion as to the ultimate fact at issue between the parties. The court, in reversing, stated:
* * * * * *
"There is considerable authority for the lower court's ruling in excluding the testimony of the two experts as an invasion of the province of the jury, but we feel that the present trend of authority is to make no distinction between evidential and ultimate facts as subjects of expert opinion. See North v. State, Fla. 1952, 65 So.2d 77 at pages 87, 88; 20 Am.Jur., Evidence, § 782, p. 654. It is still the sole province of the jury to accept or reject the testimony of the expert witness, regardless of how respectable and qualified that witness may be, and the jury is in no wise bound by the expert's conclusions, any more than it is bound by the testimony of any other witness. This theory has been cited with approval and further explained in II Wigmore on Evidence, 3d Ed., § 673, p. 795."
* * * * * *
The defendants further assert that Dr. Lassiter's testimony as to the "value" of a deceased wife to a husband was not "competent evidence" to go to the jury on the issue of damages in a wrongful death case. There appears to be no case in Florida which is directly applicable; however, the cases of Lithgow v. Hamilton, Fla. 1954, 69 So.2d 776, and Smith v. Whidden, Fla. 1956, 87 So.2d 42, did establish that "persons" who qualify as experts in the employment service field may testify as to the proper value of the services of which the husband is deprived. In the case sub judice, Mr. Robert M. Douglas, the office manager of the Florida State Employment Service in West Palm Beach, testified as to the number of persons necessary to replace the deceased mother and their prospective salaries.
Dr. Lassiter had received his Doctor of Philosophy degree from the University of Florida in 1957 and had been teaching since 1955. His particular field was economics, agricultural economics and statistics, giving particular study as to the "value" of a wife and mother to a household. He had been retained as consultant to various outside companies, testified before state administrative *494 boards, authored and published various articles in this particular field, and had previously testified in other courts on this topic.
There is no doubt that the persons who testified on this issue were fully qualified in their field, and it is our opinion that the trial court did not abuse its discretion in permitting their testimony into evidence. We approve the rationale expressed in Krohne v. Orlando Farming Corporation, Fla.App. 1958, 102 So.2d 399 on page 401, concerning the allowance of expert testimony, wherein it was stated:
* * * * * *
"The trial court has, in the first instance, a responsibility of allowing or disallowing the testimony of an expert and he also has the responsibility present to determine not only the qualifications, but also as to the range of subjects regarding which he can testify. * * *"
* * * * * *
"`* * * the qualifications of a witness to give expert opinion presents a preliminary question of fact to be determined at the trial by the presiding justice, and will not, in the absence of abuse of discretion, be reviewed in this court * * *'"
* * * * * *
After Dr. Lassiter had testified, an article appeared in a local newspaper concerning his testimony in this case and in a prior case. The article may have contained some inaccurate, or misleading information, but had come to the attention of only one of the jurors. The day after the publication appeared the defendants moved for a mistrial because of its publication. The trial judge reserved ruling on the motion until the conclusion of the case. The record reflects that the trial court interrogated the jurors concerning any prejudicial effect of the article upon them, and that the trial court determined that prejudicial error, to warrant a mistrial, had not been shown.
In order to obtain a reversal on this point the defendants must show that they have been prejudiced by the publication and that the jurors could not render a fair and impartial verdict after having been exposed to prejudicial matter. Since no prejudicial error has been shown as a result of the newspaper article, we do not find error in this regard. See United States v. Pisano, 7 Cir., 1951, 193 F.2d 355; Reining v. United States, 5 Cir., 1948, 167 F.2d 362; 32 Fla.Jur. Trial § 230; 5 U. of Fla.L.Rev. 432; Annot. 31 A.L.R.2d 417.
Another of the defendants' points on appeal is based on the refusal of the trial court to instruct the jury that any award to the plaintiff would not be subject to income tax and that the jury should not consider such taxes in fixing the amount of any award. As authority they rely on Poirier v. Shireman, Fla.App. 1961, 129 So.2d 439, and Stager v. Florida East Coast Railway Company, Fla.App. 1964, 163 So.2d 15. In opposition thereto, the plaintiff refers us to Rhodes, Inc. v. Knowles, Fla. 1957, 99 So.2d 302, and Florida East Coast Railway Company v. Schweida, Fla.App. 1963, 151 So.2d 665.
We have carefully examined the last two cases cited, and find that Rhodes, Inc., supra, is of little value, as it is a per curiam decision of affirmance by the Supreme Court of Florida, without opinion. The Schweida case, supra, does not contain any reference to an instruction concerning income tax. It may well be that these matters were contained in the record in those cases cited by the plaintiff, but the law of Florida does not require us to search through court files to extract evidence or facts not mentioned in the reported opinions.
The cases of Poirier and Stager, supra, stand for the rule that it is not an abuse of discretion to grant such an instruction in a proper case, and that "on this question and on these facts" the trial court was not in error in giving the requested charge.
There is a split of authority throughout the country as to the propriety of giving *495 such a charge. See Poirier, supra, 129 So.2d pages 442-445. There is, however, substantial competent authority indicating that it is within the discretion of the trial court, as to whether the requested charge should be given and in the absence of an abuse of discretion it is not reversible error to refuse such a charge. See Prudential Insurance Company of America v. Wilkerson, 5 Cir., 1964, 327 F.2d 997; Payne v. Baltimore and Ohio Railroad Company, 6 Cir., 1962, 309 F.2d 546; New York Central Railroad Company v. Delich, 6 Cir., 1958, 252 F.2d 522; Anderson v. United Air Lines, Inc., D.C.S.D.Cal., 1960, 183 F. Supp. 97; Dixie Feed & Seed Company v. Byrd, 1963, 52 Tenn. App. 619, 376 S.W.2d 745; Behringer v. State Farm Mutual Auto Ins. Co., 1959, 6 Wis.2d 595, 95 N.W.2d 249; Bergfield v. New York, Chicago & St. Louis R. Co., 1956, 103 Ohio App. 87, 144 N.E.2d 483; Annot. 63 A.L.R.2d 1393.
Even though it might have been proper to give the requested instruction we do not find, on the facts involved herein, that the trial court abused its discretion or committed reversible error in refusing to give a charge which would merely have told the jury not to consider a factor which the court had no reason to believe they would consider if the charge were not given.
We find no error in the trial court's denial of the defendants' motion, after trial, to amend their answer to assert a defense of contributory and/or comparative negligence to the plaintiff's claim as father of the deceased child. The motion was based on the grounds that the evidence established that the plaintiff was the owner, or one of the owners of the car, or that the driver of the car was an employee of the plaintiff, acting in the course of her employment.
The evidence indicates that the certificate of title to the car was in the name of the deceased wife. The plaintiff testified he bought the car and that it was used principally by his wife. This evidence was insufficient to prove that the plaintiff was the owner or one of the owners of the car. The applicable rule is set forth in 17 Fla.Jur. Husband and Wife § 43:
"* * * where property is purchased by the husband and conveyed to the wife, a presumption arises from their relationship at the time the conveyance was made that no trust was intended. The courts will presume that the wife takes the beneficial title as well as legal title, and that by placing title in her name the husband intended a gift. * * *"
The only evidence applicable to a claimed defense under the doctrine of respondeat superior is adduced from the following testimony:
* * * * * *
"Q Mr. Braz, do you have any idea where your wife had been?
"A Yes, sir.
"Q On the morning of this accident?
"A Yes, sir.
"Q Give us your understanding of where she had been.
"A She was at Joe Mack's dairy farm in Jupiter, or just west of Jupiter.
"Q That was one of your customers?
"A Yes, sir.
"Q Did you later learn that she had been there?
"A Yes, sir.
"Q All right, sir. Do you have any idea, Mr. Braz, how she got up there? By that I mean the route that she would take.
Had you had any discussion with her that morning about it?
"A No, sir."
* * * * * *
This does not show that the deceased wife was "acting in the course of any *496 employment" for the plaintiff husband. Since we have previously determined that the wife was the "owner" of the automobile, the husband, as the alleged employer, could not therefor consent to or authorize the use of the automobile. Such consent from the owner to his employee is essential to establish liability under the doctrine of respondeat superior. Southern Cotton Oil Co. v. Anderson, 1920, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255; 3 Fla.Jur. Automobiles §§ 153, 154.
The defendants contend that the verdicts herein are so excessive as to indicate passion, bias and prejudice on the part of a jury that should shock the judicial conscience. In Little River Bank & Trust Co. v. Magoffin, Fla. 1958, 100 So.2d 626, the Supreme Court said:
* * * * * *
"It has long been the settled rule in this jurisdiction that damages in a personal injury action are for the discretion of the jury. Unless `clearly arbitrary', Sproule v. Nelson, Fla. 1955, 81 So.2d 478, [76 A.L.R.2d 1066] or `so excessive as to indicate that the jury was influenced by passion, prejudice, corruption, or other improper motive,' Upton v. Hutchinson, Fla. 1950, 46 So.2d 20, 21, or `so much greater than it should have been as to shock the judicial conscience,' Bartholf v. Baker, Fla. 1954, 71 So.2d 480, 484, the amount awarded by the jury will not be disturbed on appeal. The burden is on the appellant to establish the fact that the verdict is wholly unsupported by the evidence or was the result of passion, prejudice or other improper motive. Bartholf v. Baker, supra."
* * * * * *
We find that the amount of the verdict for the child is not clearly arbitrary or excessive when compared with those which have been sustained in the past under Section 768.03. See Georgia Southern & Florida Railway Company v. Perry, 5 Cir., 1964, 326 F.2d 921, ($65,000.00 for death of seventeen year old girl); Hooper Const Co. v. Drake, Fla. 1954, 73 So.2d 279 ($35,000.00 for death of five year old child); Holland Paving Co. v. Dann, Fla.App. 1964, 169 So.2d 849 ($50,000.00 for death of infant); Coast Cities Coaches v. Donat, Fla. App. 1958, 106 So.2d 593 ($45,000.00 for death of six year old child).
The defendants complain of the admission into evidence, over their objection, of the testimony of Dr. Lassiter of an amount of money ($76,863.00) required in the future to furnish the plaintiff with clerical help to replace services performed gratis by the deceased wife to the husband's corporation. The testimony of plaintiff husband was that in addition to being a housewife and performing motherly duties, his wife found time to work in his business, a corporation, in excess of twenty-five hours a week. Mrs. Braz received no actual salary or compensation from the corporation for such services rendered.
Plaintiff husband contends that he is entitled to damages for the loss of these services under the authority of Lithgow v. Hamilton, supra, wherein it was stated that among the elements of damage which a jury was entitled to consider in these cases was "any special service which the wife was accustomed to perform * * * in his business without compensation, which will have to be replaced by hired services."
No mention was made as to the legal character of the husband's business in that case and we are unable to determine if it were a corporate or individual business. We think it is an important distinction, as we see no right for the plaintiff husband to recover, individually, for the replacement value of clerical services rendered gratis to a corporation by his deceased wife.
The amount which Dr. Lassiter computed for the prospective replacement of clerical services of the wife to the corporation ($76,863.00) was only one of several different amounts which he stated would be necessary for the husband to recover to replace the "value" of the deceased wife.
*497 We believe that legal liability has been shown by the record and that justice would best be served by permitting a voluntary remittitur to purge the judgment, in the case of the wife, of the improper element of damages involving her clerical services to a corporation. Braddock v. Seaboard Air Line Railroad Company, Fla. 1955, 80 So.2d 662; Great American Ins. Co. v. Suarez, 1932, 107 Fla. 705, 146 So. 644; South Florida Farms Co. v. Stevenson, 1922, 84 Fla. 235, 93 So. 247; 2 Fla.Jur. Appeals §§ 352, 353. It would seem to agree with logic and reason that the jury did not allow the full amount of $76,863.00 for replacement of "clerical services" rendered gratuitously by the wife to the corporation in arriving at its verdict, as there were various other items of damages correctly in evidence.
The Supreme Court has set forth in the Suarez case, supra, the following rules and comments on remittiturs:
"The practice of affirming judgments on conditions of remittiturs originated in this state at an early date. See Simpson v. Daniels, 16 Fla. 677; McLean v. Spratt, 20 Fla. 515; Gunning v. Heron, 25 Fla. 846, 6 So. 855; Savannah F. & W.R. Co. v. Davis, 25 Fla. 917, 7 So. 29. The theory on which remittiturs are allowed is that by so doing the appellate court does not substitute its own judgment for that of the jury, but simply indicates by its decision that it would not sustain, on the record before it, a judgment for a greater sum than the amount it indicates might be upheld under the law, in which event the prevailing plaintiff in the court below is given the option to either take the amount indicated as the maximum, or suffer a new trial in order to have the damages more clearly determined before another jury. Florida Ry. & Nav. Co. v. Webster, 25 Fla. 394, 5 So. 714.
"In cases where some legal liability is shown by the record brought here on writ of error, but it is plainly apparent from that same record that under no circumstances could the court justifiably under the law uphold the amount of damages allowed by the jury in that particular case, without better or additional proof on a new trial, which better or additional proof may, or may not, be available to be offered by the plaintiff, should a new trial be had, the practice here is in general to affirm the judgment as to the liability shown, and permit a voluntary remittitur by the prevailing party to purge the judgment of obviously excessive damages, provided the plaintiff wishes to pursue that course, instead of suffering a new trial to fix an amount of damages that would be supported by the record. This carries out the constitutional mandate to the courts to administer justice speedily and without delay, by permitting cases to be concluded promptly without waiting for a new trial if prevailing plaintiff below is willing to accept what the Court indicates is the maximum amount of damages he can recover without submitting to a new trial and offering better or additional proof on the subject of his damages."
For the reason stated the judgment in appeal no. 64-1057 is affirmed, and the judgment in appeal no. 64-1058, which was entered on a verdict for $185,000.00 in the wrongful death action predicated on the death of plaintiff's wife, is affirmed on the liability, and the latter judgment also is affirmed as to damages on condition that within thirty days after issuance and filing of our mandate the plaintiff files in this cause in the trial court a voluntary remittitur of $25,000.00 of the amount of the judgment; otherwise, the judgment in appeal no. 64-1058 shall stand reversed for new trial as to the amount of damages.
It is so ordered.

*498 ON PETITIONS FOR REHEARING
PER CURIAM.
Petition of appellants for modification and for rehearing and a petition of appellee for rehearing directed to this court's opinion and judgment filed January 25, 1966, have been considered and are denied.
An additional motion of appellee for an extension of time for filing a remittitur (for which our opinion fixed "within thirty days after issuance and filing of our mandate") to permit a period of time after disposition of a petition for certiorari in the Supreme Court of Florida is granted. Whereupon, the opinion and judgment of this court filed January 25, 1966, is amended, as to the time fixed therein within which a remittitur may be filed, to read "within thirty days after issuance and filing of our mandate, or, in event proceedings thereon are stayed by the timely filing of a petition for certiorari in the Supreme Court of Florida as provided for in Rule 4.5c(6), F.A.R. [31 F.S.A.], the period within which such remittitur may be filed shall include twenty days after the final disposition of such certiorari in the Supreme Court of Florida." Except as amended by the foregoing, the said opinion and judgment of this court in this cause continues in force and effect.
It is so ordered.